J-S70041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH PETRICK | : | |
| | : | |
| Appellant | : | No. 619 MDA 2017 |

Appeal from the Judgment of Sentence March 8, 2017
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s):  CP-35-CR-0000068-2016

BEFORE:  GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 20, 2018**

Joseph Petrick appeals from the judgment of sentence imposed March 8, 2017, in the Lackawanna County Court of Common Pleas.  The trial court sentenced Petrick to a term of three to 18 months' imprisonment, and directed him to pay $6,700.00 in restitution, following his non-jury conviction of theft by deception.[1]  On appeal, Petrick challenges the sufficiency of the evidence supporting his conviction, as well as the legality and discretionary aspects of his sentence.  For the reasons below, we affirm.

The facts underlying Petrick's conviction were summarized by the trial court as follows:

> These charges arose on April 14, 2015, when [Petrick] entered into a contract with Donna Sabia to perform remodeling

_____

[1] *See* 18 Pa.C.S. § 3922(a)(1).

work on her home in Scranton. The contract provided that in exchange for $3500, [Petrick] would frame and sheet rock the kitchen, bathroom and living room, and lower the kitchen ceiling. The contract also provided that the work would start on April 16, 2015, and would last 5 to 7 days. Ms. Sabia gave [Petrick] a check for $1750 as a deposit and a check for $300 to obtain permits from the city. [Petrick] began some of the work on the home on April 18, 2015, and on that date, Ms. Sabia gave him another check for $1750. [Petrick] cashed each of these checks. Donna Sabia's son, Carmen Fazio,[2] also purchased a saw for approximately $600 for [Petrick] in exchange for a contract to perform painting in the home, but the painting was never done. [Petrick] returned to the home on April 19 and performed more work. He also entered into another contract with Mr. Fazio to put siding on the exterior of the home and stated that he could obtain the siding materials for $2300. Mr. Fazio paid [Petrick] $2300 in cash to purchase the siding, but the siding was not purchased. After April 19, 2015, [Petrick] never returned and did no more work on the home, leaving the interior of the vicitm's home an uncompleted construction project. He also never obtained the required permits, and never returned the saw that Mr. Fazio purchased for him. Mr. Fazio called and texted [Petrick] numerous times in April and May of 2015. At first [Petrick] stated that he needed to hire help and was working on another job but would return to finish the work. He agreed to return on May 22, 2015, but did not. On May 26, 2015, he texted Mr. Fazio and stated he would not be able to complete the job after all, but would refund $4950 to them within the week. He never refunded any of the funds paid.

Trial Court Opinion, 6/2/2017, at 1-2. In August of 2015, Petrick filed for

Chapter 7 bankruptcy, and listed both Sabia and Fazio as creditors. *See* N.T.,

12/12/2016, at 64-65, 74. The bankruptcy has since been discharged*. See*

*id.* at 65.

_____

[2] Although Sabia owned the property and signed the contract, Fazio lived at the house where the work was being done.

In October of 2015, Petrick was charged with theft by deception and deceptive business practices.[3]  He waived his right to a jury trial, and, on December 12, 2016, the court found him guilty of one count of theft by deception, and not guilty of deceptive business practices.  On March 8, 2017, Petrick was sentenced to a standard range term of three to 18 months' imprisonment, and directed to pay restitution in the amount of $6,700.00.  He filed a motion for reconsideration of sentence, which the trial court denied on March 21, 2017.  This timely appeal followed.[4]

Petrick's first two issues challenge the sufficiency of the evidence supporting his conviction.[5]  Our review of a sufficiency claim is well-established:

> "Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is de novo and our scope of review is plenary." **Commonwealth v. Tejada**, 107 A.3d 788, 792 (Pa. Super.2015), *appeal denied*, ___ Pa. ___, 119 A.3d 351 (2015) (citation omitted).  "When reviewing the sufficiency of the evidence, this Court is tasked with determining whether the evidence at trial, and all reasonable inferences derived therefrom, are sufficient to establish all elements of the offense beyond a reasonable doubt when viewed in the light most favorable to the Commonwealth [.]"  **Commonwealth v. Haney**, ___ Pa. ___, 131 A.3d 24, 33 (2015) (citation omitted).  "The evidence need

---

[3] **See** 18 Pa.C.S. § 4107(a)(2).

[4] Although the record does not reflect an order from the trial court directing Petrick to file a concise statement of errors complained of on appeal, Petrick's counsel filed a Pa.R.A.P. 1925(b) concise statement on May 11, 2017, after requesting, and being granted, an extension of time.

[5] We will address Petrick's first two claims together.

not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." **Commonwealth v. Coleman**, 130 A.3d 38, 41 (Pa. Super.2015) (internal quotation marks and citation omitted).

**Commonwealth v. Walls**, 144 A.3d 926, 931 (Pa. Super. 2016), *appeal denied*, 167 A.3d 698 (Pa. 2017).

In the present case, Petrick was convicted of theft by deception, which is defined in Section 3922 of the Pennsylvania Crimes Code as follows:

A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:

(1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise[.]

18 Pa.C.S. § 3922(a)(1). This Court has explained that, in order to sustain a conviction of theft by deception, "the Commonwealth [is] required to prove beyond a reasonable doubt that when [the defendant] received the initial payment from [the complainants] he did not intend to perform his part of the contract." **Commonwealth v. Layaou**, 405 A.2d 500 (Pa. Super. 1979). **See also Commonwealth v. Bentley**, 448 A.2d 628 (Pa. Super. 1982) ("If the current appellant's conviction for theft by deception is to be affirmed, we must find that appellant never intended to perform his part of the contract(s).").

Here, Petrick asserts the evidence was insufficient to establish the *mens rea* for his conviction. **See** Petrick's Brief at 14. Relying on **Layaou** and **Bentley**, he argues the Commonwealth failed to prove beyond a reasonable

doubt he intended to deprive the complainants of their money at the time he entered into the contracts. *See id.* at 15. Rather, he insists, "the Commonwealth showed nothing more than a breach of contract." *Id.* at 18. Furthermore, Petrick contends the trial court erred when it cited his failure to refund any money to the complainants as evidence of his intent to deceive. *See id.* at 19-20. Rather, he states he was "unable to refund the [complainants] any portion of their deposit due to the Bankruptcy Act's prohibition of the same." *Id.* at 20.

A review of the decisions in *Layaou* and *Bentley* is instructive. In *Layaou*, *supra*, the defendant entered into a contract to build an addition for the complainants, who made an initial payment of $1,017.00, approximately one-third of the contract price. He purchased some materials and "had his workers dig and put in a footer and put up a floor on stilts," before he failed to return and complete the job. *See Layaou*, *supra*, 405 A.2d at 412. The trial court found that although the evidence "up to the time [the defendant] first abandoned the job was not sufficient to show more than mere non-performance," the defendant's "later actions of refusing to return the [complainants'] calls and of failing to complete the job" after promising to do so at his preliminary hearing, was sufficient to support a conviction of theft by deception. *Id.* at 414. A panel of this Court disagreed and reversed the conviction. *See id.* The panel explained the defendant's actions demonstrated he "intended to perform originally but for some reason later abandoned the job." *Id.*

Similarly, in **Bentley**, a couple entered into several, successive contracts with the defendant to repair a porch, rebuild a garage, and build a retaining wall. **See Bentley**, **supra**, 448 A.2d at 629-630. The couple made down payments totaling approximately one-third of the contract costs. The defendant also requested an additional payment of $1,655.00, and told the couple "he needed the money because of personal family problems[,]" but would build a patio at no cost. **Id.** at 629. Although he began to perform some work under the contracts, he did not complete any of the jobs. Further, the defendant testified, and the couple agreed, "at least in part, that unexpected problems arose in the course of the work, including the type of concrete block to be used, the width of the porch and other expenses." **Id.** at 630 (record citations omitted). Similar to **Layaou**, the trial court found the defendant guilty of theft by deception, and a panel of this Court reversed on appeal. The panel opined:

> If the [defendant's] conviction for theft by deception is to be affirmed, we must find that [he] never intended to perform his part of the contract(s). Our review of the record fails to show any evidence as to [the defendant's] intent, except his failure to perform. This alone is insufficient. The [complainants] were referred to [the defendant], unlike [in other cases], in which the defendants initiated the business relationship. [The defendant] supplied his correct name, address and phone number. [His] use of the proceeds for unrelated purposes, … was not barred by the contract; in fact, the payment of the second third of the contract price was made knowing that [the defendant] intended to use the money for nonbusiness purposes. Finally, [the defendant] had expended substantial resources in attempting to fulfill his side of the bargain.

**Id.** at 631-632.

Petrick insists that here, like in **Layaou** and **Bentley**, there was no evidence he intended to deceive the complainants at the time he entered into the contract. **See** Petrick's Brief at 18. Moreover, he maintains the trial court erred when it found he was insolvent at that time. **See id.** Rather, he states he did not file for bankruptcy until four months later after experiencing additional financial problems. **See id.** at 19. He emphasizes that he made no statements to the complainants which misrepresented his financial situation, he provided them with his correct address and phone number, and he actually purchased materials for the job and began the work. **See id.** Accordingly, he argues the evidence was insufficient to establish he intended to commit theft when he entered into the contracts.

The trial court addressed Petrick's sufficiency claim as follows:

In this case, [Petrick] represented to the victims that in exchange for $6100, he would perform remodeling work on their home, and in reliance on this, they paid him $6100.[6] They believed that he was solvent and that he would be able to fulfill his contractual obligations. However, [Petrick] testified at trial that when he entered into this contract, his business was struggling financially and he had money issues. He testified that he did not finish the job or refund the money because he was in a bad financial situation and that he used the money for other jobs. He testified that he eventually filed for bankruptcy in August of 2015. He testified that he never obtained permits for which the victims had paid him $300 because he was not certain that permits were required. In finding [Petrick] guilty, this court stated that [Petrick] never got the permits, and that his testimony that

_____

[6] The $6,700.00 in restitution ordered by the trial court also included the price of the saw Fazio purchased for Petrick in exchange for painting work that was never completed.

- 7 -

he did not know whether they were needed is a great challenge to his credibility since he had been in the contracting business for 20 years. The court also sound that [Petrick] acknowledged that he was having business difficulties when he entered into the contract and that it appears that his main objective in contracting with the victims was to obtain cash to satisfy other creditors who were clamoring and snapping at his heels. The court found that [Petrick's] motive behind the whole thing was to obtain money and that the Robin Hood defense that he was robbing one person to pay another does not work since it is still theft. The court found that if [Petrick] had been operating in good faith, he would have finished the work since he had all of the materials and tools necessary to do so. Finally, the court found that [Petrick's] defense that he had filed for bankruptcy and could not reimburse the victims is without merit since there was plenty of time between April of 2015 and August of 2015 when he could have completed the work or reimbursed the victims.

Thus, as this court found at the time of trial, [Petrick's] own testimony established that [he] obtained the victims' money by creating the false impression that his business was solvent and that he would complete the work. He testified that he used the money instead to pay other creditors. The evidence was thus sufficient to establish that he had the requisite intent to commit theft by deception. [Petrick's] argument that because he filed for bankruptcy, he could not reimburse the victims and could not have committed theft is without merit. He testified that he did not file for bankruptcy until August of 2015, but he entered into the contract in April of 2015. He committed the theft when he took the victims' money in April and used it to pay other creditors. He could have performed under the contract or reimbursed the victims between April and August 2015, but he chose not to do so.

Trial Court Opinion, 6/2/2017, at 5-6 (record citations omitted).

Bearing in mind our standard of review, and viewing all facts in a light most favorable to the Commonwealth as verdict winner, we conclude the record supports the ruling of the trial court. Petrick, himself, testified that because of the "bad financial situation" he was experiencing, he was "contemplating" bankruptcy even before taking the complainants' job, but he

decided to "struggle through it[.]" N.T., 12/12/2016, at 62-63. Moreover, despite this knowledge, he agreed to perform several different jobs for the complainants, accepted checks and cash as down payment for these jobs and materials, and "juggled" the money he received "from one job to another[.]" *Id.* at 63. Furthermore, as emphasized by the trial court, the testimony revealed Petrick accepted and cashed a check for $300.00 specifically for permits, but never applied for or received any permits for the construction project. *See id.* at 18-19, 47-48. Unlike in *Bentley*, *supra*, Petrick never indicated he was using the funds the complainants provided for anything but the job at hand. *Compare Bentley*, *supra*, 448 A.2d at 631-632. The trial court, acting as fact finder, determined Petrick never intended to complete the jobs when he entered into the contracts. We find no reason to disagree.

In his second sufficiency argument, Petrick contends the trial court erred in relying upon "his inability to refund any money to the homeowners" as evidence supporting his conviction. *See* Petrick's Brief at 20. He maintains he properly listed Fazio and Sabia as creditors on his bankruptcy petition, and was, therefore, legally prohibited from refunding any money while the petition was pending. *See id.*

Petrick misrepresents the court's findings. The trial court emphasized Petrick took no steps to finish the work or refund any of the complainants' deposits between April 2015 and August 2015, **before** he filed a petition for bankruptcy. *See* Trial Court Opinion, 6/2/2017, at 6. Indeed, the court stated: "[Petrick] committed the theft when he took the victims' money in

April and used it to pay other creditors. He could have performed under the contract or reimbursed the victims between April and August of 2015, but he chose not to do so." ***Id.*** Accordingly, the court committed no error.

Next, Petrick contends the court's order directing him to pay $6,700.00 in restitution is illegal because the debt owed was discharged in his bankruptcy proceedings. ***See*** Petrick's Brief at 20-23. Citing Section 362 of the Bankruptcy Code, and a decision of the United Stated Bankruptcy Court, Petrick maintains a state may not use a criminal proceeding "for the sole purpose of collecting a debt dischargeable in bankruptcy." ***Id.*** at 22, *quoting* ***Johnson v. Lindsey***, 16 B.R. 211, 212 (Bankr. M.D. Fla. 1981). ***See also*** 11 U.S.C. § 362(a)(6). Accordingly, he asserts the restitution part of his sentence is illegal.

Preliminarily, we note that although Petrick failed to raise this claim in the trial court, he correctly states this challenge, which questions the court's authority to impose restitution, implicates the legality of his sentence, and, therefore, is not subject to waiver. ***See Commonwealth v. Burwell***, 42 A.3d 1077, 1084 (Pa. Super. 2012). Nevertheless, we find he is entitled to no relief.

A panel of this Court addressed the same issue in ***Commonwealth v. Shotwell***, 717 A.2d 1039 (Pa. Super. 1998). In that case, the defendant filed for bankruptcy, after defrauding the victim, and listed the debt owed to the victim as an "unsecured debt in dispute." ***See id.*** at 1044. Before his conviction, the debt was discharged in bankruptcy. ***See id.*** at 1046.

- 10 -

Accordingly, the defendant asserted the victim was "using the criminal proceedings to circumvent the discharge,"[7] and the trial court "had no authority 'to reimpose' the debt through an order of restitution." **Id.** at 1044. In affirming the restitution order, the panel opined:

> Upon examination of the facts of this case, in light of the relevant law, we hold that an order of restitution, payable pursuant to the Pennsylvania Crimes Code, is not subject to discharge under the Bankruptcy Code. **See** 11 U.S.C.A. § 523(a)(7); **Kelly v. Robinson**, [479 U.S. 36 (1986)]. We further hold that an order of restitution entered subsequent to a bankruptcy discharge is separate and distinct from any discharge involving a civil debt. Here, the trial court's order of restitution arose out of the traditional responsibility of the Commonwealth to protect its citizens by enforcing its criminal statutes and to rehabilitate offenders by imposing a criminal sanction intended for that purpose. **See id.** Neither the Bankruptcy Code nor Pennsylvania law will allow appellant to avoid the consequences of his criminal scheme, as the decision to impose restitution turns on the penal goals of the State and the situation of the offender. A condition of restitution in a criminal sentence simply does not recreate the civil debtor-creditor relationship that existed in the bankruptcy proceedings. **Id.** Accordingly, we will not disturb the trial court's restitution order.

**Id.** at 1046.

We find the facts in the present case indistinguishable from those in **Shotwell**, **supra**. Accordingly, we conclude the court's restitution order was not an illegal sentence, and Petrick is, therefore, entitled to no relief.

In his final issue, Petrick challenges the discretionary aspects of his sentence. When considering such claims, we must bear in mind:

---

[7] **Shotwell**, **supra**, 717 A.2d at 1046.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (quotation omitted), *appeal denied*, 125 A.3d 1198 (Pa. 2015). Furthermore, it is well-settled that:

> [a] challenge to the discretionary aspects of sentencing is not automatically reviewable as a matter of right. Prior to reaching the merits of a discretionary sentencing issue:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* [Pa.R.Crim.P. 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Grays*, 167 A.3d 793, 815–816 (Pa. Super. 2017) (some citations omitted).

In the present case, Petrick complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence, subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, before we may address the merits of his claim, we must determine whether

he has raised a substantial question justifying our review.[8] Petrick's assertion that the trial court failed to consider the sentencing factors set forth in 42 Pa.C.S. § 9721(b),[9] before imposing his sentence raises a substantial question for our review. ***See Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006).

Section 9721(b) of the Pennsylvania Sentencing Code provides that when imposing a sentence,

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b). Petrick alleges the trial court failed to consider these factors, and "relied solely on his failure to refund money to the homeowner as reason for his sentence." Petrick's Brief at 24. He argues he did not repay them before filing for bankruptcy because he did not have the money, and he did not attempt to repay them after trial "because he was concerned that this would affect his appellate rights." ***Id.*** Petrick emphasizes he had no prior record score, and his "lifelong history of blameless, law abiding conduct should

---

[8] A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." ***Commonwealth v. Ventura***, 975 A.2d 1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted).

[9] ***See*** Petrick's Brief at 13, 23.

be a mitigating factor … where the misconduct is a wholly isolated event and where the offender has experienced such shame and remorse that he has been, at least, partially punished." **Id.** at 25. Accordingly, he requests we vacate his sentence and remand for resentencing.

Our review reveals no abuse of discretion on the part of the trial court. First, Petrick readily admits the three-month minimum sentence imposed by the trial court fell within the standard range of the sentencing guidelines. **See** Petrick's Brief at 23 (noting the standard range was restorative sanctions to nine months' imprisonment). Second, the trial court specifically stated that, in imposing the sentence, it took into "consideration the nature and gravity of the offense and [Petrick's] own rehabilitative needs, the entire contents of the presentence file and the specific facts of this case." N.T., 3/8/2017, at 12. Moreover, although the trial court did question Petrick regarding his failure to make any restitution payments since he had been "back in business,"[10] the court did not impose a term of imprisonment solely for that reason. **See** N.T., 38, 2017, at 8. Rather, the court focused on the fact Petrick took no steps between April 2015 and August 2015, when he filed his Petition in Bankruptcy, to either issue a partial refund to the complainants or perform some of the work. **See id.** at 10. Specifically, the court found Petrick's inaction did not

_____

[10] At the sentencing hearing, counsel explained Petrick was "still in the construction business," but that "he's changed his policies and his practices" and tries not to "overextend himself." N.T., 3/8/2017, at 6.

- 14 -

display any "good faith" on his part. ***Id.*** at 11. Because Petrick fails to identify how the trial court abused its discretion in imposing a standard range sentence, he is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/20/2018