448 A.2d 628

**COMMONWEALTH of Pennsylvania**

v.

**Gerald C. BENTLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 30, 1981.

Filed July 23, 1982.

Janette Baisley Worstell, Assistant Public Defender, Washington, for appellant.

Michael S. Oreski, Assistant District Attorney, Washington, for Commonwealth, appellee.

Before CAVANAUGH, MONTEMURO and VAN der VOORT, JJ.

VAN der VOORT, Judge:

In a bench trial appellant was found guilty of theft by deception, 18 Pa.C.S.A. § 3922. Post-trial motions, were denied and appellant was sentenced to two years probation. Although subdivided into three headings, only two contentions are advanced:

(1) the verdict was against the weight of the evidence and therefore contrary to law; and

(2) the trial judge erred in not granting a motion for severance.

Due to our resolution of the first issue we need not address the second contention.

■ The first contention resolves itself into a question of whether there was sufficient evidence to establish that appellant obtained partial payments on a contract by means of a deception (or deceptions) which existed at the time the payments were procured, as distinguished from a subsequent failure on his part to perform the contract he had undertaken.[1] See *Commonwealth v. Gallo*, 473 Pa. 186, 373 A.2d 1109 (1977); *Commonwealth v. Dunmeyer*, 5 Pa.D & C 3d 30 (1977).

[1] While appellant captions his contention in terms of "weight of the evidence" and as being "contrary to Law", in actuality his challenge is to the sufficiency of the evidence. We cannot emphasize enough the distinction between the "weight of the evidence" and "sufficiency of the evidence". If a court finds the evidence was insufficient, a retrial is barred. However, if a court reverses a conviction based on the weight of the evidence, retrial is permitted. *See, Tibbs v. Florida,* —— U.S. ——, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

On May 22, 1979, Mr. and Mrs. Jesse H. Landsperger, described as "an elderly couple" contracted with the appellant, who represented himself as "Bentley Builders". Appellant was to repair a porch for $841; he was paid a "downpayment" of ⅓, or $280.33. Mrs. Landsperger had been referred to appellant by her sister. Twenty days later, on June 11, 1979, the parties made a second contract, superseding the first, calling for the original repairs plus rebuilding a garage for a total cost of $4,965, at which time an additional $1,374 was paid to appellant, representing one-third (⅓) of the total price, after giving allowance for the first payment of $280.33. On June 15, 1979, according to Mrs. Landsperger, before any work had been done, and at appellant's request,[2] she paid him an additional $1,655 (a second ⅓ of $4,965). She testified that appellant said he needed money because of personal family problems, and appellant said that if the second $1,655 was then paid, he would build a patio at no additional cost.

Mrs. Landsperger further testified that between June 15, 1979 and June 26, 1979, appellant, using sometimes two men and sometimes four, tore down the old porch and garage and installed a footer (N.T., p. 35). On June 23, 1979, appellant requested and received $800, promising to build a retaining wall (R. 14). On June 29th, he received an additional $200. The payments totalled $4,309, approximately 87% of the contract price. No work was done by appellant after June 27, 1979. The Landspergers made repeated unsuccessful attempts to contact him, and then filed criminal charges in July, 1979, after which appellant made several promises to resume work, but never did. Appellant testified, and the Landspergers agreed, at least in part, that unexpected problems arose in the course of the work, including the type of concrete block to be used (N.T., pp. 17, 37), the width of the porch and other expenses (N.T., pp. 56, 57).

Theft by deception, 18 Pa.S.C. § 3922, occurs when:

2. Appellant testified that this payment was made after he had half completed the job (N.T. 53–55).

(a) A person ... intentionally obtains ... property of another by deception. A person deceives if he intentionally:

    (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

    .   .   .   .   .

    (b) *Exception*—The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed.

Judge Rodger's Opinion for the Court en Banc refusing post-trial motions (Sweet and Gladden, JJ. concurring) reviews the testimony and concludes that the trial judge "was justified in finding that the appellant, under the circumstances, by deception received moneys from this elderly woman and that his state of mind when making these promises created false impressions, both as to value and his intentions." (Opinion, page 8).

The leading Pennsylvania case in this area is *Commonwealth v. Gallo*, supra. There the defendant was a sole owner of a publication company. Representing himself as an "account executive" for another publishing concern of national repute, the defendant offered to put together an advertising brochure for a general contractor. In return, the general contractor was to solicit from his subcontractors and suppliers ads to be placed within the brochure. The defendant would charge for these secondary ads but not for the promotion of the general contractor. The defendant had showed the contractor several examples of brochure he had previously put together; the contractor was impressed with them. Defendant collected monies for advertisements placed by sub-contractors and suppliers. When no brochure was forthcoming and after repeated attempts to contact the defendant, criminal charges were filed. Thereafter the contractor would not accept the proofs of the brochure.

The defendant blamed the delay on a dispute between the general contractor and one of his suppliers. The dispute was confirmed by testimony. The Supreme Court found that the misrepresentation that he was an "account executive" was a "matter having no pecuniary significance" as the contractor entered into the deal because of the brochures shown to him. The fact that the defendant had given his correct telephone number and address showed a lack of an intention to deceive. The Supreme Court concluded that, alone, the defendant's failure to perform could not support an inference of an intent existing at the time the funds were received to not perform.

A lower court case which is very analogous to the current case is *Commonwealth v. Dunmeyer*, 5 Pa.D & C 3d 30 (1977). There a painting contractor approached a farmer about painting his barn. The painter gave his correct name, address and telephone number. After several conversations and after the farmer had made inquiries of others concerning the contractor, the farmer entered into a contract. A down payment was made. The defendant returned the next day to perform some preparatory work. He did not return again until two months later, when he requested and received $30 for paint. The next day he commenced painting. Leaving his ladders and other materials at the site, he did not return. The farmer inquired and found that the defendant had moved eight miles away. He filed a criminal complaint.

The defendant claimed he had lost his driver's license and was unable to obtain help, and therefore he could not complete the job even though he wanted to. The lower court found that the defendant had not made any false factual assertions. The court found insufficient evidence of the required intent at the time the contract was entered. It noted that repetition of the promise to perform without the actual performance may bear on credibility but not on intent at time of contracting. Change of address after the contract was consummated could not relate back to the time of

contracting. The use of the down payment money for other purposes, unless limited by the contract, was permissible.

A brief discussion of two cases in which the evidence was found sufficient for a conviction for theft by deception, will help explain the disposition we make here.

In *Commonwealth v. Posavek*, 278 Pa.Superior Ct. 265, 420 A.2d 532 (1980), the victim responded to an ad in the newspaper. As a result of such, he entered into an agreement with defendant. For $7,500, the company which the defendant was associated with would establish the victim with accounts and displays of various types of alarms. The company was to provide the victim with training and establish a local distribution center. While the accounts were provided and displays supplied (though with damaged or inferior merchandise), no training was provided and no local center set up, resulting in the victim being handicapped in maintaining the accounts. The defendant argued that the shortfalls were of no "pecuniary significance" and that he was no longer associated with the company.

This court found that the victim did not receive what he bargained for. The defendant had been cooperative prior to the agreement, but difficult to contact after the agreement was made. While he may not have secluded himself, unlike *Gallo*, where it was a one man operation, he attempted to use a business organization to evade responsibility. The defendant even failed to sign the contract. The merchandise was inferior and/or damaged. Taking all of the above into consideration, the court found that the defendant had not intended to perform his promises.

A case involving a construction is *Commonwealth v. Joy*, 253 Pa.Superior Ct. 177, 384 A.2d 1288 (1978). There three men approached an elderly lady concerning repairing her house, and pointed out that her porch was in need of repair. She agreed to have the porch repaired for $1,800. She gave them $878, $800 for paint and $78 for tax. Twelve gallons of paint were purchased. Subsequently, four men com-

menced ripping up the porch; the victim was informed that materials would cost $1,000; she gave them a check for that amount. Defendant subsequently advised the elderly lady that she had a gas leak. After further convincing, the victim was told that her chimney would need relining; she agreed to pay $1,200 for such work. The defendant drove the victim to the bank to get the $1,200. Work was to commence the next day. The victim called a furnace man, who found nothing out of order. The defendant and his associates never returned.

This court affirmed the conviction, finding that the surrounding subjective circumstances were sufficient to show the defendant intentionally deceived the victim.

If the current appellant's conviction for theft by deception is to be affirmed, we must find that appellant never intended to perform his part of the contract(s). Our review of the record fails to show any evidence as to appellant's intent, except his failure to perform. This alone is insufficient. The Landspergers were referred to appellant, unlike in *Jay* and *Posavek*, in which the defendants initiated the business relationship. As in *Gallo* and *Dunmeyer*, appellant supplied his correct name, address and phone number.[3] Appellant's use of the proceeds for unrelated purposes, as in *Dunmeyer*, was not barred by the contract; in fact, the payment of the second third of the contract price was made knowing that appellant intended to use the money for nonbusiness purposes. Finally, appellant had expended substantial resources in attempting to fulfill his side of the bargain. See *Gallo*, supra.

We find that the crime of theft by deception was not proved beyond a reasonable doubt.

Judgment of sentence reversed and appellant discharged.

3. While appellant did business under the name of "Bentley Builders," he did not attempt to evade responsibility by use of a business entity. Compare *Posavek*, supra.