## Commonwealth v. Fisher

*James F. Marsh,* District Attorney, for the Commonwealth.
*Barry J. Cohen,* for petitioner.

WILLIAMS, Sr. *J.,* January 4, 1984 — Rudolph A. Roseo and Marie Roseo presented the instant Petition, pursuant to Pa.R.Civ.P. 133(B)(3)(ii), seeking approval by the court of their private criminal complaint against Fred Fisher, trading as Delaware and Pennsylvania Homes, Inc., which the district attorney had disapproved on September 8, 1983 for the reason, "This is a civil matter". In the complaint, petitioners charged defendant with theft by deception, as defined by the Criminal Code, 18 Pa.C.S.A. §3922(a)(1)(2) and (3). They averred that "The defendant fail [sic] to live up to the contract that was signed between the affiant and defendant on September 10, 1982, to build a home on Lot 8, Block 7, Unit 4 of Monroe Lake Shores Development, Marshall creeks middlesmithfield [sic] Township". An attached affidavit incorporated copies of the construction contract between petitioners and Delaware and Pennsylvania Homes, Inc., executed on September 10, 1982 by petitioners and by Fred Fisher as Vice President of Delaware and Pennsylvania Homes, Inc., together with specifications attached thereto (Exhibit "A"); copies of five checks drawn by petitioner Rudolph A. Roseo: (1) and dated September 10, 1982 for $10,000 payable to

First Int'l Mtg. Corp., bearing the legend "For Bld"; (2) No. 102 dated February 4, 1983 for $2,000 payable to Fred Fisher, bearing the legend "Add work for house Redwood"; (3) No. 105 dated April 1, 1983 for $10,000 payable to Marshall Greek [sic] Ast. Inc.; (4) No. 107 dated May 12, 1983 for $2,835 payable to Fred Fisher and endorsed by him under the legend:

"for STUCCO — x window
STEAM GENERATOR — garry slab"

and (5) No. 108 dated May 12, 1983 for $10,000 payable to Marshall Creeks [sic] Estates (Exhibit "B"); and copy of a letter dated July 27, 1983 (Exhibit "C") from Barry J. Cohen (Attorney for Petitioners) to Mr. Fred Fisher and Delaware and Pennsylvania Homes, Inc., stating, in pertinent part:

"I am writing to advise you that the Roseos are declaring that you have breached the construction contract by *failing to have complete it in a timely manner* or otherwise complete it in a workman like fashion.

"In lieu of this breach, this letter is to serve as formal notice that you should perform no further work on the property, that you should remove yourself and your equipment from the property within one week of the receipt of this letter, and that any rights arising out of the contract for your entry onto the property are hereby revoked.

"If you are found to be on the premises after one week from the date of this letter, you do so at your own risk, as you will be considered a trespasser." (Emphasis supplied.)

In the affidavit of petitioner Rudolph A. Roseo, he avers more specifically:

"5. Construction began during September, 1982, *and was promised by* FRED FISHER *to be finished by December, 1982.* It was not completed by FRED

FISHER or any of this Corporations." (Emphasis supplied.)

The contract, however, contains no deadline for completion but, rather, expressly provides:

"3. It is agreed between the Owner and the Contractor that there are no understandings of any nature which are not specified herein, and that this agreement contains the entire agreement between the parties."

Under the contract, the total construction price of $36,000 was to be paid in installments as the work progressed upon the following schedule:

A. Upon signing, etc.                              $10,000
B. When excavation and foundation complete and ready for sill and girder
C. When shell erected with roof felt on and interior partitions set. (This payment to include the pre-cut shell and accessory material package as invoiced.)        10,000
D. When rough plumbing and wiring are installed and roof shingles are on                                              4,000
E. When exterior siding and interior brown coat plaster or dry wall work is completed                              10,000
F. When house is completed according to this Agreement                     2,000

In his affidavit, petitioner Rudolph A. Roseo avers:

"6. FRED FISHER completed the house up through Stage 'E' on the payment schedule except for the following:

(a) Interior brown coat plaster work on the entire first floor; and

(b) Bathroom on the first floor.

"7.  In addition to the above, the following has not been completed in accordance with the Contract:

   (a)  No Septic System;
   (b)  No Well;
   (c)  No Pipeline from the Well to the House;
   (d)  Installation of three windows;
   (e)  Installation of one glass door;
   (f)  Installation of Wrought Iron Spiral Staircase;
   (g)  Installation of Kitchen Cabinets;
   (h)  Completion of the first floor in general."

It appears that petitioner Rudolph A. Roseo has paid the three $10,000 installments representing Stages A, C, and E of the Schedule, or a total of $30,000, and two installments of $2,000 and $2,835, or a total of $4,835 representing extra work not specified in the original Contract. He has not paid either the $4,000 installment for Stage D or the $2,000 installment designated for completion of the construction.

## DISCUSSION

At the outset, it is necessary to consider the scope of the review by the court of common pleas provided by Pa.R.Crim.P. 133 (B)(3)(ii). The basic objective of such a review is to determine whether or not the District Attorney, in disapproving the private Criminal complaint, has abused his prosecutorial discretion. See: Sandutch v. Farrell,      Pa. Super.      , 466 A.2d 701 (1983), where Judge Lipez said:

"This is an appeal by a private criminal complainant from an order in which the court below quashed proceedings under Rule of Criminal Procedure 133(B)(3)(ii), which permits the complainant to file a private criminal complaint with the common pleas court if it has been disapproved by the district attorney[1] [Footnote omitted]. Since the court below quashed the proceedings on an incorrect procedural

ground, we vacate the order and remand for a determination on the merits of whether the district attorney abused his prosecutorial discretion in disapproving the private criminal complaints in this case."

The discretion accorded to the District Attorney is commensurate with the duties and obligations imposed upon him by reason of his office. In Commonwealth v. Malloy, 304 Pa. Super. 297, 450 A.2d 689, 691, 692 (1982), Judge Cirillo said:

"Though a victim may seek a complaint against an alleged criminal, the district attorney is charged with the responsibility for the investigation and prosecution of any complaint of which he approves. The Act of July 5, 1957, P.L. 484, No. 275, §1; 16 P.S. §1402 provides that the district attorney is the one '. . . who shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth. . .' In the performance of his duties, the district attorney is a quasi-judicial officer with the duty to seek justice, not just convictions. Commonwealth v. Pfaff, 47 Pa. 461, 384 A.2d 1179 (1978). He is obligated to perform the task intelligently and impartially. Commonwealth v. Wiggins, 239 Pa. Super. 256, 361 A.2d 750 (1976). The prosecutor is under no compulsion to prosecute every alleged offender, and the decision to prosecute or not to prosecute is a matter within his discretion. United States ex rel. Miller v. Rundle, 270 F. Supp. 55 (E.D. 1967), subject to review by the court of common pleas [9 Pa.R.Crim.P. 133(B)(3)(ii) allows the complainant to file a complaint, disapproved by the district attorney, with a judge of the court of common pleas for approval or disapproval]."

In Commonwealth v. Braun, 19 D. & C.3d 572, 573, 574 (1980), the court, as had the district attorney,

disapproved a private criminal complaint after finding that the petitioner had produced no evidence demonstrating an abuse of prosecutorial discretion on the part of the district attorney. Judge Brumbaugh said:

"In determining the guideline applicable to our disposition of the matter we turn first to the rule (Pa.R.Crim.P. 133(B)(3) governing such private prosecutions, which confers jurisdictions upon us in the following language:

" 'If the attorney for the Commonwealth . . . (ii) disapproves the complaint, he shall state his reasons on the complaint form and return it to the affiant. Thereafter the affiant may file the complaint with a judge of a Court of Common Pleas for approval or disapproval.'

"Unlike the Commonwealth attorney in the first instance, the court in its consideration thereafter is not required to give reasons for either approval or disapproval; in fact, there is no mandate that we even grant a hearing. See Piscanio Appeal [235 Pa. Superior Ct. 490, 344 A.2d 658 (1975)]. infra. fn. 5, a.p. 495. Thus our function in the instant matter is distinguishable from a hearing upon appeal, wherein the court is called upon to receive evidence anew and to exercise its own completely independent judgment. . . . That our right of review is restricted appears in Com. v. Morris, 267 Pa. Super. 379, 381, 406 A.2d 1091, 1092 (1979), quoting with approval Shade v. Com., 394 F. Supp. 1237, 1242 (M.D. Pa. 1975):

' "[W]hile there may be instances in which the courts would be entitled to review the exercise of prosecutorial discretion, such review is limited to circumstances involving the deliberate use of such factors as race, religion, or other suspect classifications . . . . In the absence of such factors,

the exercise of prosecutorial discretion does not violate due process or equal protection of the law.

' "The criminal law is not a computerized system and discretion . . . . is a necessary and inherent part of the criminal justice system. Prosecutorial discretion in law enforcement 'is by its very nature exceedingly broad' and such discretion is an essential part of the criminal justice system." '

"The broader the prosecutorial discretion, the narrower must be the right of review thereof, and consequently our involvement is intended as but a guard against its indiscriminate or invidious use. When, as here, hearing is held and evidence received by the court, the applicant must show preponderantly an abuse of such discretion. See, also, United States v. Torquato, 602 F.2d 564, 568-570 (3d Cir. 1979)."

In the instant case, petitioners have failed to present any such evidence of abuse by the District Attorney of his prosecutorial discretion.

By disapproving petitioners' private criminal complaint, the district attorney achieved two objectives: not only did he exercise, without abuse, his discretionary privilege not to prosecute, but he also performed his duty not to press a charge unsupported by legal evidence. To sustain a charge of theft by deception under 18 Pa.C.S.A. §3922, it is essential to establish that the defendant, at the time of receiving payment for performing a promise, had the intention not to perform the promise. In Commonwealth v. Dunmeyer, 5 D. & C.3d 30, 35, 36 (1977), defendant, on August 8, 1975, signed a written agreement to paint the owner's barn for a total price of $1,000, $500 down and $500 on completion on or before November 1, 1975. The down money was paid by check when the agreement was signed. The following day, defendant and a helper appeared and

worked for four hours preparing the barn windows for painting. After that day, defendant did not return until September 8 when he told the owner he had used the down money and needed more money for paint, whereupon the owner gave him a check for an additional $30. The next day, defendant returned with a can of paint and worked about four hours painting the barn. He left his material and ladders but did not return again. Apparently, defendant moved to the village of Gray, about eight miles from the owner's farm. In September 1976, the owner filed a private criminal complaint charging defendant with theft by deception under 18 Pa.C.S.A. §3922, which the district attorney approved. After defendant was convicted, the court granted defendant's motion in arrest of judgment. President Judge Coffroth said:

"Code section 3922, supra, makes it clear that deception may result from a false impression as to one's intention or state of mind, which is a fact. This is a new development in the criminal law of Pennsylvania, introduced by the Crimes Code. Under prior law, the Penal Code of 1939 and its predecessor, the Act of 1860, the corresponding offense of false pretense required a false representation of misstatement of fact other than the mere making of a promise implying an assertion of intention to perform. See 18 P.S. §4836 Appendix; Commonwealth v. Mauk, 79 Pa. Super. 153, 157 (1922). See also Commonwealth v. Bomersbach, 224 Pa. Super. 40, 302 A.2d 472 (1973), and Commonwealth v. Kelinson, 199 Pa. Super. 135, 184 A.2d 374 (1962). Now, under the Code, if when the promiser makes a promise of future performance he, in fact, has no intention of performing it, and thereby creates a false impression in the mind of the promisee which induces him to part with his down money, there is a

theft by deception. If, on the other hand, the promise is honestly made with good intention to perform it, but later the promisor fails to perform because of change in mind or circumstance, there is no crime. Consequently, the mere nonperformance of a promise tells us nothing about whether the promise was false when made, and Code section 3922(a)(i), therefore, specifically provides that 'deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise'[3] [Footnote omitted]."

Commonwealth v. Dunmeyer was cited and followed more recently in Commonwealth v. Bentley, 302 Pa. Super. 264, 270, 448 A.2d 628, 631, 632 (1982). There, in reversing a judgment of sentence for Theft by Deception under 18 Pa.C.S.A. §3922, Judge Van der Voort said:

"If the current appellant's conviction for theft by deception is to be affirmed, we must find that appellant never intended to perform his part of the contract(s). Our review of the record fails to show any evidence as to appellant's intent, except his failure to perform. This alone is insufficient."

In the instant case, there is a complete lack of evidence that defendant intended not to perform the contract at the times when payment for performance was made. The existence of such an intent is negatived by defendant's admitted performance of Stages A, C, and part of E. His failure to continue work on the construction project was precipitated, not by his own choice, but by the letter from Petitioners' attorney declaring a breach — without foundation in the terms of the Contract — and instructing him to remove himself and his equipment from the premises. The charge of Theft by deception was not supported by the evidence proferred.

Petitioners appear to have recognized the deficiencies of the charge made in the original private criminal complaint, because they now urge the validity of a charge of theft by failure to make required disposition of funds received, under 18 Pa.C.S.A. §3927. This is a separate and independent offense: Commonwealth v. Celane, Pa. Super. , 457 A.2d 509, 513 (1983). It was not submitted to the district attorney, and it will not be considered here.

## ORDER

And now, this January 4, 1984, the petition of Rudolph A. Roseo and Marie Roseo for approval of their private criminal complaint against Fred Fisher, t/a Delaware and Pennsylvania Homes, Inc., is dismissed.