**[J-29-2022]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 22 WAP 2021 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Superior Court entered December 4, |
| | : | 2020 at No. 908 WDA 2019, |
| v. | : | affirming the Judgment of Sentence |
| | : | of the Court of Common Pleas of |
| | : | Allegheny County entered April 15, |
| BRIAN DANIAL DONAHUE, | : | 2019 at No. CP-02-CR-0015582- |
| | : | 2017. |
| Appellant | : | |
| | : | ARGUED:  April 13, 2022 |

**DISSENTING STATEMENT**

**JUSTICE WECHT**                                          **DECIDED: JUNE 20, 2022**

I respectfully dissent from the Court's dismissal of this appeal as having been improvidently granted.  In my view, when we granted *allocatur*, we did so because this case raised novel and thorny legal questions about criminal prohibitions against home improvement fraud, and also due to an apparent lack of clarity regarding how lower courts should interpret relevant case law in this area.  *See* Pa.R.A.P. 1114.  Accordingly, I believe that this dispute warrants a precedential opinion from this Court, in which we might for the first time provide guidance to the bench and bar throughout the Commonwealth on this vexing subject matter.

In light of the Court's disposition today, several important questions remain unanswered.  How does the Superior Court's analysis square with *Commonwealth v. Gallo*, 373 A.2d 1109 (Pa. 1977), and *Commonwealth v. Bentley*, 448 A.2d 628 (Pa. Super. 1982), which expounded the theft by deception statute?  To what degree do the elements of the more familiar theft by deception statute, 18 Pa.C.S. § 3922—its *mens rea*

standard, its treatment of burdens of proof and the sufficiency of evidence—inform our construction of the home improvement fraud statute, 73 P.S. § 517.8(a)(1), which is of much more recent vintage and upon which this Court has never opined? How should judges and district attorneys distinguish the bad businessperson (who might be susceptible to civil remedies) from the criminal contractor (who more appropriately might face the threat of prosecution and the indelible taint of conviction)?

Having reached the threshold of these questions, the Court inexplicably turns back. For the following reasons, I would have pushed forward and attempted to fulfill our constitutional function of elucidating the law.

The facts underlying this appeal are straightforward. A condominium association in Wilkinsburg, Allegheny County, hired Brian Donahue, a contractor, to re-roof several rowhomes. The parties executed a contract in March 2017. Sharon Mistick (the association's president and treasurer) and Christopher March (its vice president) gave Donahue a check for a down payment in the amount of $8,000. Though Mistick later admitted that the parties established no definitive time frame for the project's completion,[1] Donahue had estimated that the installation would take approximately six days.

Between March and August 2017, Donahue completed minimal work and failed to communicate with the condo association. He attributed the delay to the weather, a family tragedy, and a personal injury.[2] At a meeting in August 2017, Donahue assured Mistick and March that he was committed to finishing the roof, and everyone agreed that Donahue would continue working. But when Donahue did nothing by the end of the month, Mistick and March went to the police and filed a criminal complaint. At Donahue's

---

[1]    Notes of Testimony ("N.T."), 2/8/2019, at 19 ("There was no time frame, no.").

[2]    Donahue said that it was a "rainy year," pointed to back surgery he had in August as well as a scheduled trip to California, and related that there was a tragedy in his extended family that had taken his attention. N.T., 2/8/2019, at 73-76.

bench trial in 2019, witnesses indicated that some of his equipment and materials were still on the association's property nearly two years later.

Ultimately, the trial court convicted Donahue of theft by deception and home improvement fraud. It later sentenced him, in the aggregate, to one year of probation and ordered restitution in the amount of $5,000. Donahue filed a post-sentence motion challenging the sufficiency of the evidence, which the trial court denied.

Donahue's appeal stemmed from *Gallo*, in which William Gallo, the owner of a publishing company, struck a deal with a contractor named David Leveto. Gallo agreed to create a brochure promoting Leveto's business in exchange for advertising fees as well as the names and contact information for various subcontractors and suppliers. Gallo collected $1,750, but, months later, Leveto had heard nothing about the production of the brochure. Leveto then went to the police department. Investigators learned that Gallo was not an account executive, as he had claimed, but a one-man business operating out of his home. After Leveto filed a criminal complaint, Gallo sent the brochures to the printer and forwarded him the proofs. Leveto refused to accept them. At trial, Gallo argued that there was insufficient evidence to convict him of theft by deception. He pointed to the fact that the brochures he eventually produced were satisfactory to Leveto and similar to the model brochures; the fact that his telephone number and address were correct, even if he had failed to respond; and the fact that his delay in performance was due to a dispute over the credit memorandum Leveto had offered. Nevertheless, the trial court convicted Gallo and the Superior Court affirmed.

This Court granted allowance of appeal and reversed. We unanimously held that Gallo's claim that he was an account executive at a particular company was inconsequential, as the relevant statute explained that "'deceive' does not . . . include falsity as to matters having no pecuniary significance." 18 Pa.C.S. § 3922(b). All in all,

the only evidence of record as to Gallo's intent to deceive was his failure to perform, and "[t]hat alone is insufficient." *Gallo*, 373 A.2d at 1111; *see* 18 Pa.C.S. § 3922(a)(1).

Donahue also cited *Bentley*, in which an elderly couple hired a contractor to repair a porch, rebuild a garage, and erect a retaining wall. 448 A.2d at 629. Bentley tore down the old porch and garage, installed a footer, and (by way of various installments) had received approximately eighty-seven percent of the contract price when he stopped working. The couple made several unsuccessful attempts to contact him. After they filed criminal charges, though, Bentley repeatedly promised to resume work. He never did. At trial, he explained that unexpected problems concerning the type of concrete block to be used, the width of the porch, and various other expenses had arisen in the course of the construction. The trial court convicted Bentley of theft by deception, and he appealed.

The Superior Court reversed. Citing *Gallo*, the court reasoned that the only evidence of Bentley's intent to deceive was his failure to perform, which was insufficient. Furthermore, it observed that Bentley did not initiate the business relationship, always used a correct name, address, and phone number, and expended substantial resources in attempting to fulfill his end of the contract.[3] Accordingly, the Commonwealth had failed to prove theft by deception beyond a reasonable doubt.

Likening his circumstances to those in *Gallo* and *Bentley*, Donahue stressed that he expended a considerable sum of his own money to fulfill the contract, he did not initiate

---

[3]     *See Bentley*, 448 A.2d at 631-32; *see also Commonwealth v. Posavek*, 420 A.2d 532 (Pa. Super. 1980) (holding that the defendant did not intend to perform his promises where he had attempted to use a business organization to evade responsibility); *Commonwealth v. Joy*, 384 A.2d 1288 (Pa. Super. 1978) (holding that, where individuals had repeatedly advised an elderly lady that her house required unnecessary repairs, the "surrounding circumstances" were sufficient to show that they had intended to deceive her); *Commonwealth v. Dunmeyer*, 5 Pa. D. & C. 3d 30, 40 (Somerset Ct. Com. Pl. 1977) ("The repetition of promise and default bears heavily on defendant's credibility . . . [but] such weakness in defendant's evidence cannot supply the evidence of criminal intent which the Commonwealth has the burden of producing").

the business relationship, he provided accurate contact information to the association, and he offered a colorable rationale for why the project had fallen behind schedule. Critically, he further contended that the primary piece of evidence used by the Commonwealth to demonstrate his intent was the bare fact of his failure to perform, which Section 3922(a)(1) expressly forbids.

The Superior Court affirmed. *See Commonwealth v. Donahue*, 908 WDA 2019, 2020 WL 7091280 (Pa. Super. Dec. 4, 2020). The panel appeared to credit the Commonwealth's position that Donahue's "belated nominal efforts, evasiveness[,] and failure to make amends, evince that he did not intend to perform the work at the outset." Commonwealth's Sup. Ct. Br. at 7; *Donahue*, 2020 WL 7091280 at *4. The court rejected Donahue's reliance upon *Gallo* and *Bentley*. The court reasoned that Gallo's inability to perform stemmed in part from Leveto himself, whereas here, all of the blame rested with Donahue. In *Bentley*, the panel explained, there was a problem with the materials, which was not a factor here. Donahue accepted a down payment for a job that was supposed to take six days, then failed to complete the job for several months. In the Superior Court's view, Donahue's intent was demonstrated by more than his "mere nonperformance." *Id*. The trial court, acting as fact-finder, determined that Donahue never intended to complete the work and the Superior Court saw "no reason to disagree." *Id.*

We granted *allocatur* on two issues:

1. Was the evidence sufficient to establish the intent element necessary to support Petitioner's conviction for theft by deception, 18 Pa.C.S. § 3922?

2. Was the evidence sufficient to establish the intent element necessary to support Petitioner's conviction for home improvement fraud, 73 P.S. § 517.8(a)(1)?[4]

Donahue raises a colorable argument that the lower court's reasoning represents a departure from *Gallo* and *Bentley*. In my view, the Superior Court's attempt to

---

[4]     *Commonwealth v. Donahue*, 262 A.3d 452 (Pa. 2021) (*per curiam*).

distinguish those cases is somewhat dubious and calls for more rigorous analysis. The panel pithily summarized Donahue's argument as "suggest[ing] that because he did not initiate the business relationship and did not change his [contact information], these facts support his intention to complete the work." *Id.* at *3. But the Court did not discuss those facts in the context of *Gallo*, nor did it weigh those similarities against the distinction it drew. Furthermore, while the *Bentley* court noted that "unexpected problems arose in the course of the work, including the type of concrete block to be used," it did not rely upon that fact that in reaching its decision. *Bentley*, 448 A.2d at 630; *cf. id.* at 631-32 (analyzing the merits). Rather, that panel focused on the exact similarities that Donahue identifies. *Id.* at 632 ("As in *Gallo* . . . appellant supplied his correct name, address and phone number.").

To be sure, Donahue's case may be distinguishable from *Gallo* and *Bentley* on other grounds. But because the Court refuses to grapple with these precedents at all, their essential import will become more difficult for litigants to discern in future cases. Although unpublished Superior Court decisions are non-precedential, they nonetheless may be persuasive. *See* Pa.R.A.P. 126(b). Foreseeing no better vehicle to resolve the lingering ambiguity in these decades-old cases, I would take this opportunity to do so.

Critically, the sole convictions in *Gallo* and *Bentley* were for theft by deception. Donahue also was convicted of home improvement fraud pursuant to Section 517.8(a)(1). As discussed, this Court has yet to opine upon the function and contours of that particular statute, which is all the more reason to offer guidance via an authoritative opinion. *See* Pa.R.A.P. 1114(b)(3) (stating that a petition merits *allocatur* where "the question presented is one of first impression").

Even if Donahue's conviction were only for theft by deception, there still would be questions to resolve and clarity to provide. Donahue points out that, per the

Commonwealth's criminal information, he apparently committed theft by deception "on (or about) Thursday, [March 16th]," when the parties entered into the contract, "through Thursday, [March 23rd]," the date that the check cleared. Donahue's Br. at 33. What evidence of his deceptive intent existed at that time? How precise must a criminal information be in this context?[5] Moreover, the Superior Court seemed to rely upon the Commonwealth's claim that the trial court, as fact-finder, failed to credit parts of Donahue's testimony. *See Donahue*, 2020 WL 7091280 at *3. But there is no such evidence in the record. The trial court never made adverse credibility findings as to Donahue. *See* Tr. Ct. Op. at 1-5. Even if it had, as Donahue points out in his reply brief, that alone may not have been sufficient for the Commonwealth to carry its burden.[6] These questions may appear facile to the Court. Perhaps their resolution would not change the outcome. We should nevertheless seize this opportunity to offer clarity to bench and bar.

Donahue's conviction for home improvement fraud is a different animal entirely. In dismissing this appeal, the Court declines to explain that statute's relationship vis-à-vis the crime of theft by deception. Are their intent requirements the same or different? Is an individual guilty of home improvement fraud necessarily guilty of theft by deception? Suspecting that these questions will eventually return to our docket, I would endeavor to answer them now.

Donahue laments that "[t]o err is human," and concedes that he "should not have been in contention for Businessperson of the Year." Donahue's Br. at 26. But he maintains that his actions do not rise to the level of criminality. In doing so, he alludes to

---

[5] Theft by deception often may be a crime of opportunity, such that it would be difficult (if not impossible) to isolate the exact moment that one's intentions went from honest to malicious.

[6] *See* Donahue's Reply Br. at 2-3 (citing *Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (noting that "the Commonwealth cannot sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony")).

the tremendous power that prosecutors and judges inevitably will wield in the gray area that the Court leaves behind. They will continue drawing those distinctions, and they will do so without our guidance or caution.

This case illustrates the need for line-drawing. On the one hand, private parties should not leverage the criminal code to resolve disputes that might be more suited to the world of contracts. *Cf. Commonwealth v. Gallo*, 345 A.2d 747, 752 (Pa. Super. 1975) (Cercone, J., dissenting) ("This controversy is simply a contractual dispute between two experienced businessmen which is best resolved in a civil forum."). Indeed, instead of going to the police department, Mistick and March could have gone to their attorney's office and sued Donahue for breach of contract. In that vein, what's disconcerting about the Court's decision to dismiss this appeal and issue no guidance is that some citizens will see the opportunity to use the criminal code for civil leverage and instigate prosecutions of slow-moving contractors. On the other hand, we must give force and effect to the enactments of the General Assembly, such that the home improvement fraud statute means something and can serve as a deterrent to mendacious ne'er-do-wells.

Uniformity in application of the statute may be unattainable here, but that is no excuse for not trying. In my view, the status quo—in which courts engage in a sort of freewheeling "I know it when I see it" assessment[7]—all but guarantees a wide variation of outcomes from one end of the Commonwealth to the other. The Court could have marshaled its resources, its understanding of the arguments at hand, and its wisdom to prevent that outcome. Instead, it sits idle.

I would afford Donahue's appeal the attention that this Court initially recognized that it deserves in order to provide much-needed guidance on these important questions. Because the Court has decided otherwise, I respectfully dissent.

---

[7]     *See Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).