J-S18044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| JAMES HAROLD BOLYARD JR. | : | |
| Appellant | : | No. 1114 WDA 2024 |

Appeal from the Judgment of Sentence Entered July 2, 2024
In the Court of Common Pleas of Warren County Criminal Division at
No(s): CP-62-CR-0000022-2023

BEFORE: DUBOW, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: July 3, 2025**

Appellant, James H. Bolyard, Jr., appeals from the judgment of sentence entered by the Court of Common Pleas of Warren County after a jury convicted him of Theft by Deception,[1] Deceptive Business Practices,[2] and Home Improvement Fraud.[3] He raises issues challenging the sufficiency of the evidence and, in the alternative, the weight of the evidence, and he contends a mistrial was warranted for the Commonwealth's inducement of testimony referring to Appellant's prearrest refusal to meet with a detective investigating the homeowner's complaints against him. We affirm.

The trial court's Pa.R.A.P. 1925(a) opinion aptly sets forth the relevant facts and procedural history of the case:

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S. 3922(a)(1).
[2] 18 Pa.C.S. 4107(a)(2).
[3] 73 P.S. 517.8(a)(2).

On September 9, 2022, Defendant [hereinafter "Appellant"] was charged by Officer Tyler D. Wagner of the City of Warren Police Department with one count each of Theft by Deception, Deceptive Business Practices, and Home Improvement Fraud[, each a Felony of the Third Degree]. In the Affidavit of Probable Cause, Officer Wagner alleged that Donald Annis ("Victim") and Appellant entered into a written contract for Appellant to complete a full roof replacement on Victim's home.

. . .

A preliminary arraignment was held on September 30, 2022. A preliminary hearing scheduled for October 26, 2022, was continued three times and held on January 18, 2023. . . . [After the Commonwealth filed an Information adding an additional count of Home Improvement Fraud and the defense filed a Motion for Continuance to the next trial term,] the case was continued by Order dated July 12, 2023, and scheduled for the August 2023 trial term. A jury trial was scheduled for November 1, 2023.

. . .

[Trial commenced on November 1, 2023.] The Commonwealth entered [the parties' written] contract into evidence (*Commonwealth Exhibit B*), and Appellant did not object. Victim originally signed the contract on July 6, 2021, and Appellant did not sign the Contract until October 22, 2021. This delay was attributed to Victim obtaining funds through his 401(k).

The estimated price for the full roof replacement was $22,600.00, which included labor and material costs. The original language of the contract dictated terms of payment as follows:

> Upon signing this contract, there will be a check made to James Bolyard or Custom Care Home Improvements in the amount of $15,000.00 so that the materials are able to be ordered as everything is back ordered. After roof is completed and customer is happy the remaining $7,600.00 will be paid upon completion.

[N.T., 11/1/23, at 42.]

- 2 -

On October 19, 2021, Appellant requested that Victim submit a Walmart-to-Walmart money transfer. Victim was limited by Walmart to sending $2,500.00. The Commonwealth, with no objection by the defense, submitted a receipt showing that these funds were transferred to Heather Lindsey, Appellant's fiancé. *Commonwealth Exhibit D*. Appellant requested a confirmation number from Victim to retrieve the funds, and Victim texted Appellant the same. N.T. at 49.

The next day, Appellant texted Victim saying, "Brian Chase is the name on today's transfer . . . ." N.T. at 50. The parties had agreed that Appellant could receive payments up to $15,000.00 and would receive the remainder of the funds when the job was finished. Later that day, Appellant texted Victim saying, "[o]ops, wrong name that's who I just paid lol this is the name and number Ryan Morrill. . .that's the name of my foreman the guy u [sic] met on the other roof thank u [sic]." N.T. at 50-51.

Commonwealth next introduced a receipt from the second Walmart-to-Walmart transfer dated October 20, 2021, with no objection by Appellant. *Commonwealth Exhibit E*. This transfer was also for $2,500.00. In total, as of October 20, 2021, Victim had paid Appellant, through his associates, a total of $5,000.00 through Walmart-to-Walmart transfers.[fn]

---

Fn. Each transfer also contained a $16.00 service fee.

---

The parties finalized the agreement on October 22, 2021. On that date, Victim wrote a check to Appellant's LLC in the amount of $7,000. *See Commonwealth Exhibit C*. The Commonwealth entered this check into evidence, with no objection by Appellant. By that time, in totaling the check and two transfers, Victim had paid a total of $12,000.00.

As a result, Appellant changed the agreement, so that it read that Appellant received $12,000.00 as the first downpayment on October 22, 2021, with the remaining $10,600.00 paid upon completion "unless draws are agreed upon during process." N.T. at 43.

Unknown to the Victim at this time, and later discovered by the Commonwealth, Appellant had filed bankruptcy on October 18, 2021. Appellant did this **the day before requesting the first transfer, and four days before signing the contract**. Notably, Victim had signed the contract in July of that year. This demonstrates that Appellant knew of the terms of the contract at the time of filing bankruptcy, filed and withheld this information from Victim, and cashed in on the contract beginning the very next day.

Appellant again requested a $2,500.00 Walmart-to-Walmart transfer on November 5, 2021. This transfer was again sent to Appellant's fiancé, Ms. Lindsey, with the reference number provided to Appellant. The Commonwealth introduced a Walmart receipt reflecting this transaction, which was admitted into evidence without objection. *Commonwealth Exhibit F*. This was the third and final transfer, with Appellant having received $14,500.00 in total, with $12,000.00 being received within a week of filing bankruptcy.

The Victim alleged that Appellant worked for five (5) days on the roof in November 2021, removing old shingles and leaving the roof open to the weather. Appellant's last day on the job was November 17, 2024. Appellant did not return, despite Victim reaching out to him twelve (12) times between that date and July 25, 2022. Appellant only responded twice in that entire timeframe, promising a call on May 12, 2022, and promising to come to the property on June 15, 2022, but he never did.

In total, the Victim estimates that Appellant completed only a quarter of the roof[] but did not complete a single element of the contract []. The roof remained open to the weather elements in the fall and winter of 2021 to 2022 and caused leaks in Victim's home. The Commonwealth admitted pictures of Victim's roof [as it appeared] after Appellant had not returned, with no objection by the defense. *Commonwealth Exhibit G1-G22*. Victim explained each picture to the jury, outlining how the roof was exposed to the elements, except for a felt paper covering, for approximately nine (9) months.

. . .

Following trial, [the] jury entered a verdict of guilty as to Count 1 – Theft by Deception [,] Count 2 – Deceptive Business Practices[,]

and Count 3 – Home Improvement Fraud. The jury entered a verdict of not guilty as to Count 4 – Home Improvement Fraud.

On November 9, 2023, Appellant filed a timely Motion for Post-Trial Relief, arguing that (1) the Commonwealth's evidence was insufficient to support the convictions and, as a result, the [trial court] should enter a judgment of acquittal on all charges or, alternatively, (2) [] the verdict was against the weight of the evidence and, as such, a new trial is appropriate. Appellant appropriately reserved [sic] the issues of sufficiency and weight of the evidence for appeal. By Order dated November 13, 2023, the [trial court] denied Appellant's Motion.

. . .

[On Count 1, Theft by Deception,[4]] Appellant was sentenced to fifteen (15) to thirty (30) months in a state correctional institution, with credit for time served of one (1) day. On Count 3 – Home Improvement Fraud, Appellant was sentenced to another period of fifteen (15) to thirty (30) months at a state correctional institution to run consecutive to the prior sentence at Count 1. This resulted in an aggregate sentence of incarceration of thirty (30) to sixty (60) months. Both sentences were within the standard range of the sentencing guidelines.

On July 11, 2024, Appellant filed a timely Motion for Reconsideration of Sentence.[fn] The trial court scheduled argument on the motion for August 2, 2024. On July 16, 2024, the Commonwealth filed a Motion for Nolle Prosequi pertaining to Count 4 – Home Improvement Fraud, citing a "plea agreement previously approved by the Court. . . ." The trial court granted this Motion on the same date.

_____

[4] The trial court determined that Count 1, Theft by Deception, and Count 2, Deceptive Business Practices, merged for purposes of sentencing, citing *Commonwealth v. Hill*, 140 A.3d 713 (Pa. Super. 2016) (holding the two offenses merge for sentencing because all three elements of deceptive or fraudulent business practices are included within the first three elements of home improvement fraud, and home improvement fraud has at least one additional element). *Accord*, *Commonwealth v. Rohwer*, 303 A.3d 737 at *9 (non-precedential decision) (Pa. Super. filed July 6, 2023).

> FN   Although this Motion was titled, "Motion for Reconsideration of Sentence," Appellant raised in his Motion that "the verdict from the jury was against the weight of the evidence." The trial court asked defense counsels to clarify, to which Attorney Falvo responded that Appellant was only asking for reconsideration of sentence. [N.T. for post-trial reconsideration hearing, at 2]

On August 2, 2024,[] following argument, the trial court entered an Order denying Appellant's Motion for Reconsideration of Sentence. Appellant was advised of his right to appeal to the Superior Court within thirty (30) days both on the record and in the written Order. Appellant filed correspondence which, at the time, the trial court determined to be a *pro se* first Petition for Post-Conviction Collateral Relief and appointed new counsel for Appellant on August 8, 2024. [Subsequently, the trial court deemed the *pro se* filing a timely notice of appeal from judgment of sentence and appointed counsel to represent Appellant in such direct appeal.]

The trial court [] entered an Order on September 6, 2024, directing Appellant to file a Concise Statement of Matters Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)] within twenty-one (21) days of the Order. On September 27, 2024, Appellant filed his [counseled] Concise Statement[, which raised the following issues]: There was insufficient evidence presented at trial to convict Appellant on the count of Theft by Deception;

1. There was insufficient evidence presented at trial to convict Appellant on the count of Deceptive Business Practices;

2. There was insufficient evidence presented at trial to convict Appellant on the count of Home Improvement Fraud;

3. Alternatively, the verdicts were against the weight of the evidence; and

> 4. The Commonwealth elicited testimony regarding Appellant's refusal to be interviewed by law enforcement that was prejudicial relating to Appellant's Fifth Amendment Rights and warranted a mistrial.

Trial Court Opinion, filed 10/8/24, at 1, 4, 2-4, 7-8, 8-10.

The Brief for Appellant raises the following issues for this Court's consideration:

1. Was the evidence presented at trial sufficient to support the guilty verdict on the charge of Theft by Deception, when no evidence was presented that the Appellant intended to deceive at the time the contract was entered, and the only evidence presented was for failure to perform on the contract?

2. Was the evidence presented at trial sufficient to support the guilty verdict on the charge of Deceptive Business Practices, when there was no sale, offer, or delivery of less than the represented quantity of any commodity or service and the only allegation is that the Appellant failed to properly perform renovations pursuant to a contract?

3. Was the evidence presented at trial sufficient to support the guilty verdict on the charge of Home Improvement Fraud, when there was no evidence that the Appellant made any false or misleading statement which he did not know to be true at the time he entered into the contract?

4. Are the verdicts against the weight of the evidence given the testimony about the work that was performed, the Appellant filing for bankruptcy evidence that his failure to fully perform on the contract was due to concerns about how bankruptcy would affect his contract, and testimony from the Appellant's employee about work situations causing a delay?

5. Was the testimony regarding the Appellants refusal to be interviewed by law enforcement prejudicial to the Appellant's Fifth Amendment rights such that warranted [sic] a mistrial?

Brief of Appellant, at 4-5.

Our well-settled standard of review when evaluating a challenge to the sufficiency of the evidence mandates that we assess the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict-winner. **Commonwealth v. Salamone**, 897 A.2d 1209, 1213 (Pa. Super. 2006) (citation omitted). We must determine whether there is sufficient evidence to enable the fact finder to have found every element of the crime beyond a reasonable doubt. **Commonwealth v. Clark**, 895 A.2d 633, 634 (Pa .Super. 2006) (citation omitted).

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Kerry**, 906 A.2d 1237, 1240 (Pa. Super. 2006).

In Appellant's three sufficiency of the evidence issues, he challenges, in turn, his convictions for Theft by Deception, 18 Pa.C.S. § 3922(a), Deceptive or Fraudulent Business Practices, 18 Pa.C.S. § 4107(a)(2), and Home Improvement Fraud, 75 P.S. § 517.8(a)(2). In each issue, he argues the Commonwealth failed to prove beyond a reasonable doubt that he intended to deceive or defraud the homeowner at contract formation when he received the homeowner's initial monetary deposits totaling $14,500.00 and failed

thereafter to fulfill his contractual obligation to replace homeowner's worn roof with a new one.

The intent to defraud is an element of all three charges. A person is guilty of Theft by Deception if "he intentionally obtains or withholds property of another by deception[,]" *see* 18 Pa.C.S. § 3922(a). "The *mens rea* for theft by deception is [] intent to defraud." ***Commonwealth v. Grife***, 664 A.2d 116, 120 (Pa. Super. 1995); ***accord Commonwealth v. Williams***, 279 A.3d 1259 (non-precedential decision at **2) (Pa. Super. filed May 17, 2022)[5].

Deception under Theft by Deception occurs if one intentionally "creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind[.]" 18 Pa.C.S. § 3922(a)(1); ***Commonwealth v. Risoldi***, 238 A.3d 434, 454 (Pa. Super. 2020). The Commonwealth must prove that the victim relied upon the false impression." ***Commonwealth v. McSloy***, 751 A.2d 666, 669 (Pa .Super. 2000). ***Accord Commonwealth v. Gaspard***, 323 A.3d 1276, 1279 (Pa Super. 2024), *appeal granted,* No. 511 MAL 2024, 2025 WL 840284 (Pa. filed Mar. 18, 2025)[6]

---

[5] Under Pa.R.A.P. 126(b), we may cite and rely on non-precedential decisions filed after May 1, 209, for their persuasive value.

[6] The Pennsylvania Supreme Court granted defendant Gaspard's petition for allowance of appeal on an issue unrelated to the issue presently before this panel. Specifically, the issue accepted for review by the Supreme Court's *per curiam* order is, "Where an individual fails to disclose a source of income while seeking public benefits, must the Commonwealth, in order to sustain a conviction for theft by deception under 18 Pa.C.S. § 3922, prove that the
*(Footnote Continued Next Page)*

Similarly, "Deceptive or Fraudulent Business Practices" occurs when "in the course of business, the person . . . sells, offers or exposes for sale, or delivers less than the represented quantity of any commodity or service." **See** 18 Pa.C.S. §§ 4107(a)(2), (a)(6). Fraud, which includes a wrongful intent to deceive, is an element of Deceptive and Fraudulent Business Practices and may be proven by evidence of receipt of a deposit with intent of not completing agreed upon work. **Commonwealth v. Eline**, 940 A.2d 421, 433 (Pa. Super. 2007). Finally, proof of Home Improvement Fraud requires that a defendant act with intent to defraud or injure or act with knowledge that he is facilitating a fraud or injury perpetrated by anyone. **Commonwealth v. Hill**, 140 A.3d 713, 718 (Pa. Super. 2016).

The factfinder may not infer that a defendant intended to deceive or defraud the victim solely from the fact that he failed to perform the acts he promised to perform. **Id**. Instead, the culpable intent must be inferred from other facts that the defendant "never intended to perform his part of the contract." **Commonwealth v. Gallo**, 373 A.2d 1109, 1111 (Pa. 1977); **Commonwealth v. Bentley**, 448 A.2d 628, 631 (Pa. Super. 1982). **See also Eline**, **supra** (holding fraud may be proven by evidence of receipt of a deposit with intent of not completing agreed upon work); **Commonwealth**

---

amount of benefits would have been different if the income had been properly reported?" **Commonwealth v. Gaspard**, Slip Copy, 2025 WL 840284 (Table) (Pa. filed March 18, 2025).

*v. Kolovich*, No. 1077 MDA 2018, 2019 WL 5405322, at *3 (non-precedential decision) (Pa. Super. Oct. 22, 2019).[7] "'Criminal intent may be established by direct or circumstantial evidence' and may further 'be inferred from acts or conduct or the attendant circumstances.'" *Gaspard*, 323 A.3d at 1279 (quoting *Grife*, 664 A.2d at 122 (holding Commonwealth presented sufficient evidence to sustain appellant's conviction for Theft by Deception where appellant prevented lenders from acquiring information which would have affected their judgment about loan transactions)).

Notably, the trial court's jury charge appropriately instructed that to conclude Appellant engaged in fraud and deception with respect to the $14,500.00 in advance payments received, the jury had to find beyond a reasonable doubt that Appellant intentionally created a false impression that he would perform all services contemplated under the contract to induce the

---

[7] In *Kolovich*, a recent non-precedential decision applying Section 3922(a) principles recognized by longstanding jurisprudence, we rejected a sufficiency challenge raised on appeal by the defendant home improvement contractor convicted of theft by deception on evidence he misused advance payments made by the homeowner in reliance on the contractor's false impressions. Specifically, the jury found contractor Kolovich "intentionally reinforced a false impression by representing to [the homeowner/victim] that the money [he] received from [the homeowner/victim] would be expressly used to purchase materials even though he knew the money would be immediately absorbed by the cash advance company to which [he] was indebted." *Id.* at *3. Further, when the homeowner asked for updates on the stalled job, contractor Kolovich falsely blamed the door company for the delay. *Id.* Such evidence, we determined, established that contractor Kolovich never intended to perform his part of the contract.

homeowner to perform his part, which was to make the advance payments. N.T. at 288.

When asked during jury deliberations to clarify the instruction that, "You may not infer deception as to the [Appellant's] intention to perform a promise from the fact alone that he did not subsequently perform the promise[,]" the trial court explained that while the jury could find Appellant's failure to complete the roof was relevant to the question of whether he intended to deceive at the time of contract formation, it was not sufficient by itself to show such intent. N.T., 11/1/23, at 305. "However," the trial court continued, "if you compound that with other circumstances, direct, circumstantial evidence, then if in your mind that's enough to meet the Commonwealth's burden beyond a reasonable doubt, then you can reach that conclusion. . . . You heard testimony, evidence, argument from both sides abut other factors for your consideration about whether or not that was the [Appellant's] intent from the beginning." N.T. at 305.

Appellant claims that the Commonwealth's evidence established only that he failed to perform on the contract, which, alone, would fail to satisfy the *mens rea* element of the offense. **See** Brief of Appellant, at 11-12. The record belies this claim.

Viewing the evidence in a light most favorable to the Commonwealth as verdict winner, we concur with the trial court's assessment that circumstantial evidence was sufficient to prove that at the time of contract formation

Appellant fraudulently and deceptively gave the false impression, upon which homeowner relied by paying a sizeable monetary deposits, that he would perform his obligations under the contract and provide homeowner with a completed new roof when he knew he was not in the financial position to do so. On this point, the trial court reasons:

> In the case *sub judice*, the victim was defrauded because of intentionally false representations of fact made by [Appellant]. [Appellant] *knew* he had filed for bankruptcy one day prior to asking for payment and four days prior [to] signing the contract with the victim. As evidenced by his rerouting of funds to his fiancé and friends, [Appellant] *knew* he would be under scrutiny by the bankruptcy trustee and court. [Appellant] *knew* that his accounts and credit lines would be affected as to prevent him from purchasing materials or paying employees to complete the job. [Appellant] knew all of this and yet proceeded to promise the victim that he would be able to perform the work and accepted victim's money. [Appellant] anxiously asked the victim several times when the contract would be signed, but never once told the victim of his financial issues.

Trial Court's Pa.R.A.P. 1925(a) Opinion at 12 (emphasis in original). Because we agree with this assessment, we deem meritless Appellant's challenges to the sufficiency of the evidence.

In Appellant's fourth issue, he contends the trial court abused its discretion when it denied relief on his posttrial motion for a new trial challenging the weight of the evidence to support his convictions. Such a claim is addressed in the first instance to the discretion of the trial court. As we explained in **Commonwealth v. Stokes**, 78 A.3d 644 (Pa. Super. 2013):

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than

- 13 -

reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* at 650. In short, a verdict should not be overturned on this basis unless "it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016).

Our standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted) (emphasis in original).

Appellant argues that the verdicts were against the weight of the evidence when one considers the defense presented testimony explaining that "about one quarter of the roof was completed[,]" and that Appellant's failure to fully perform on the contract was due to both concerns about how bankruptcy would affect his credit accounts and the ability to pay workers and

buy materials and the advice of bankruptcy counsel that he not contact creditors. Brief of Appellant, at 15.

The trial court, however, considered both the Commonwealth's and Appellant's proffers of evidence, and it concluded that the jury had undertaken an appropriate review of all evidence before reaching a verdict. The trial court expounded that the jury,

> as evidenced by their questions, took their analysis of deceptive intent seriously, and weighed the credibility of witnesses, including [Appellant]. The jury concluded that [his] based on his failure to disclose his bankruptcy days before entering into the contract, his rerouting of funds to defraud creditors, and his repeated failure to respond to Victim's attempts to reach out [were not outweighed] by the reasons set forth by [Appellant], namely[,] the work performed, [Appellant's] excuses for not performing, and testimony from [Appellant's] employee.
>
> The guilty verdict was supported by the record, and there are no facts ignored or improperly considered by the jury that are so clearly of greater weight that to ignore them or to give them equal weight with all of the facts is to deny justice. Therefore, this [trial court] properly denied [Appellant's] challenge to the weight of the evidence.

Trial Court Opinion, at 19-20.

We discern no abuse of discretion exercised by the trial court in rejecting Appellant's contention that the verdict was against the weight of the evidence because the Commonwealth failed to prove he possessed the *mens rea* necessary to support for a conviction of the charges he faced. The trial court reviewed the entirety of the evidence and concluded the jury's verdict did not shock the conscience. Accordingly, no relief is due on this issue.

In Appellant's remaining issue, he contends he suffered prejudice warranting a mistrial when the Commonwealth elicited testimony from City of

Warren Police Officer Tyler Wagner that Appellant declined his request for a stationhouse interview regarding the Victim's complaints against him. ***See*** N.T. at 186, 190. Appellant maintains that the reference to his exercise of Fifth Amendment rights "cannot be considered harmless" because "there was no substantial evidence of guilt presented[.]" Brief of Appellant at 18.

The Commonwealth counters that Appellant did not preserve this issue for appeal by lodging either a timely and specific objection or a motion for mistrial with the trial court, even after the trial court *sua sponte* called for a sidebar and instructed the Commonwealth to discontinue allusions to Appellant's refusal to accept the investigator's invitation to sit for an interview. The trial record supports this position:

| | |
|---|---|
| **Trial Court**: | All right. You've [addressed to the prosecutor] been tiptoeing around something both on direct and cross. Evidence that a defendant failed or refused to sit for an interview can't be admitted. He's got the right not to incriminate himself. |
| **Prosecutor**: | Sure. |
| **Trial Court**: | So, Mr. Waweru asked some questions close to that and you have as well. So, the fact that he wasn't interviewed, he never showed up, he was never Mirandized, you're getting very close to mistrial territory. |
| **Prosecutor**: | Okay. Thank you. |

N.T., 11/1/23, at 190.

- 16 -

An issue not raised with the trial court is waived and cannot be raised for the first time on appeal. **See** Pa.R.A.P. Rule 302. A party claiming that a trial court admitted evidence at trial in error generally must preserve that claim for appeal by making a timely objection and stating the specific grounds for the objection. **See** Pa.R.E. 103. **See also Commonwealth v. Houck**, 102 A.3d 443, 451 (Pa. Super. 2014) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue.").

The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Bloomer**, 327 A.3d 1282, 1286 (Pa. Super. 2024) (citation omitted). Because Appellant failed to object or request a mistrial in response to the Commonwealth's references to pre-arrest silence, he has waived this issue for appeal.

For the foregoing reasons, Appellant's appeal affords him no relief.

Judgment of sentence Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/3/2025