J-A13033-25

2025 PA Super 158

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY JACOB HENCK | : | |
| | : | |
| Appellant | : | No. 1316 WDA 2024 |

Appeal from the Judgment of Sentence Entered September 24, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008895-2021

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

OPINION BY BENDER, P.J.E.:               **FILED: July 24, 2025**

Anthony Jacob Henck (hereinafter, "Appellant") appeals from the judgment of sentence imposed after a jury convicted him of one count of false statement to induce agreement for home improvement services (hereinafter, "home improvement fraud"), 73 P.S. § 517.8(a)(1). Appellant argues that the evidence was insufficient to support his conviction, and also challenges the discretionary aspects of his sentence. After careful review, we affirm.

The facts of this case can be summarized as follows. Paul and Louri Storino decided to remodel their kitchen. To that end, Mrs. Storino searched online for local painting contractors and found Appellant. N.T. Jury Trial, 9/17/24-9/19/24, at 31-32. Mrs. Storino testified that after seeing multiple positive reviews for Appellant's company, Premier Painting, she called the company on January 12, 2021, seeking an estimate to have her kitchen cabinets repainted. *Id.* at 31. In response to her call, Appellant came to the

Storino home later that day, took measurements, and eventually produced an estimate. *Id.* Soon thereafter, Mrs. Storino sent Appellant $350.00 via Venmo as a deposit. *Id.* at 32. Appellant gave the Storinos his business card, which listed an address of 4677 Brownsville Road, Pittsburgh. *Id.* at 34.

Mr. Storino testified that Appellant emailed him a quote the day after coming to the Storino home, offering to do the cabinet painting for $1,900. *Id.* at 44. Two days later, on January 14, 2021, Appellant sent a second email indicating that he would reduce the price by $200 if the Storinos would agree to start the project within 7 days. *Id.* at 46. Appellant also agreed with the proposal that Mr. Storino made to remove the cabinets ahead of time so that Appellant could take them back to his shop to paint, since the job would be completed more quickly that way. *Id.* at 47. On January 21, 2021, Appellant returned to the Storino home and, after he and Mr. Storino signed a contract, Appellant removed half of the cabinets from the kitchen. *Id.* at 49. The contract included a total price of $1,700.00 (indicating the $200 reduction), with the deposit of $350 credited toward that total. *Id.* at 48. The invoice Appellant gave to the Storinos indicated that work would be completed within two to three weeks, although Mr. Storino testified that Appellant told him that it would be closer to four to five days. *Id.* at 49, 128-29. The written contract contained no completion date. *Id.* at 104-06. Appellant returned the next day to pick up the remaining cabinets that did not fit into his van on the first trip. *Id.*

Appellant never returned painted cabinets to Mr. and Mrs. Storino, nor did he return their deposit. Mr. Storino began contacting Appellant as time passed, explaining that his kitchen was unusable and asking about the status of his cabinets. *Id.* at 50-78. Numerous text messages were exchanged between the two men, as well as several telephone calls. Throughout, Appellant offered a myriad of excuses as to why he could not return the cabinets, including that he had totaled his van, that the paint would not dry, that the paint cracked as it dried, that it was too cold in his garage, which caused problems with the paint and necessitated the purchase of additional heaters, that one of his employees stole Appellant's phone, another was sick and caused delays, and that Appellant's truck either had a flat tire or could not get out of his driveway due to snow. *Id.* at 54-56, 58, 61, 67-70. Appellant also mentioned that he had a newborn child, blamed Covid for any delay, and told Mr. Storino that he was getting a PPP loan.[1] *Id.* at 71, 74, 77.

Notably, some of Appellant's given reasons for the delay were contradictory—for example, Appellant once suggested that he could bring the painted cabinets back to the Storinos if he were able to rent a U-Haul that day, but then two days later, he texted Mr. Storino that he was still waiting on the second coat of paint to dry. *Id.* at 67. In response to a text message asking for a progress update, Appellant sent Mr. Storino photos of a tire and

---

[1] This is a reference to governmental loans that were available during the Covid lockdown; PPP stands for paycheck protection program. It is unclear how Appellant's obtaining such a loan was relevant to the Storinos' cabinets.

an award Appellant had received in 2018. *Id.* at 60, 64. One exchange with Appellant during his trial testimony exemplifies his attitude toward his clients:

Q. I'm asking you a specific question. In Commonwealth's [exhibit] 16, which is [a text from] January 26th, you say the second [coat] is on, right?

A. Correct.

Q. Three days later in [exhibit] 18[,] you say: Just finished with second coat. How can that be? How can you have two second coats?

A. I don't know. Sometimes you have to tell them you have two coats on because they're upset. I don't know. What do you want me to say[?]

Q. You're saying you weren't truthful in that message?

A. I don't know. I may have had a second on, may [have] not.

*Id.* at 160. Later, extremely frustrated with the continued delay, Mr. Storino texted Appellant that he wanted to come and pick up his cabinets himself, but Appellant refused to provide his address or tell Mr. Storino where the cabinets were. *Id.* at 60-78.

Eventually, Mr. Storino called the Whitehall police, as Appellant's address on his business card was in Whitehall. *Id.* at 78. The Whitehall officer who answered the call offered to go to the address on Brownsville Road to check on the business; after which, the officer called Mr. Storino back and stated that the address was a residence where Appellant's sister and her family lived. *Id.* at 79. Neither Appellant nor any cabinets were located at the Brownsville Road residence, but the officer did obtain current contact information for Appellant. *Id.* Armed with this information, Mr. Storino called

the police department in his home community, which investigated and filed the charges against Appellant. *Id.* at 80.[2]

Following trial, a jury convicted Appellant of one count of home improvement fraud as indicated above. On September 24, 2024, the trial court sentenced Appellant to a term of 16 to 32 months of incarceration, followed by 24 months of probation. On October 1, 2024, Appellant filed a timely post-sentence motion, which was denied on October 17, 2024. Appellant filed a timely notice of appeal, and both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

[I.] Was the evidence presented at trial insufficient as a matter of law to support a verdict of guilty as to 73 [P.S.] § 517.8(a)(1)?

[II.] Did the [t]rial [c]ourt abuse its discretion when it sentenced [Appellant] to a period of incarceration of 16 to 32 months followed by 24 months of probation?

Brief for Appellant at 3.

Appellant first challenges the sufficiency of the evidence presented to support his conviction. Our standard of review for a sufficiency claim is well-established:

Because a determination of the sufficiency of the evidence presents a question of law, "our standard of review is *de novo* and

---

[2] Appellant initially proceeded to trial on four counts: theft by deception (18 Pa.C.S. § 3922(a)(1)); home improvement fraud (73 P.S. § 517.8(a)(1)); receiving advance payment for services and failing to perform (73 P.S. § 517.8(a)(2)); and misrepresenting or concealing contractor identifying information (73 P.S. § 517.8(a)(3)). The jury found Appellant guilty of only the second count, which is the subject of the instant appeal.

our scope of review is plenary." ***Commonwealth v. Williams***, 176 A.3d 298, 305 (Pa. Super. 2017). Further, we analyze this issue under the following guidelines:

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

> ***Commonwealth v. Toomer***, 159 A.3d 956, 960–61 (Pa. Super. 2017) (internal citations and quotation marks omitted).

***Commonwealth v. Ewida***, 333 A.3d 1269, 1279 (Pa. Super. 2025).

Appellant challenges his conviction for home improvement fraud, which is defined by statute as follows, in pertinent part:

> **(a) Offense defined.--**A person commits the offense of home improvement fraud if, with intent to defraud or injure anyone or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

> > (1) makes a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price….

73 P.S. § 517.8(a)(1).

Appellant argues that the Commonwealth failed to prove beyond a reasonable doubt that he had an intent to defraud the Storinos; rather,

- 6 -

Appellant maintains, the evidence merely establishes his failure to perform under the contract, which does not prove wrongful intent. Appellant acknowledges that case law analyzing the home improvement fraud statute is limited, as the statute was first enacted in 2009; thus, Appellant relies in his argument upon two cases that predate the statute.

Appellant first cites **Commonwealth v. Gallo**, 373 A.2d 1109 (Pa. 1977), a case involving the theft by deception statute. There, William Gallo contacted David Leveto and offered to provide him with brochures to advertise Leveto's home improvement business. **Id.** at 1110. Gallo, holding himself out as an "account executive" with a national publication firm, instructed Leveto to supply a list of names and addresses of subcontractors and suppliers, whom Gallo would then contact to place advertisements in the brochure. **Id.** After Leveto supplied the requested lists, Gallo received $1,750 from these advertisements. **Id.**

A couple of months later, when Leveto still had not received the promised brochures, he unsuccessfully tried to contact Gallo. **Id.** Leveto testified that he called the phone number listed on Gallo's letterhead approximately 50 times without any answer. **Id.** Leveto also sent several letters to Gallo's address, but received no response. **Id.** Only after criminal charges were filed did Gallo finally send proofs to the printer for Leveto's brochure. **Id.** Gallo was ultimately convicted of theft by deception.

On appeal, Gallo argued that Leveto had testified at trial that he had been impressed with the quality of the brochures that Gallo had initially shown

him to obtain the contract.  *Id.* at 1111.  Gallo maintained that this evidence proved that he had committed no deception.  In addressing this argument, our Supreme Court noted the following:

> If [Gallo's] conviction for theft by deception is to be sustained, it must be because [Gallo] never intended to perform his part of the contract, *i.e.*, supplying the brochures to Leveto.  The statute specifically states that "deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise."  18 Pa.C.S.[] § 3922(a)(1).

*Id*.  Because the only evidence regarding Gallo's lack of intent to perform under the terms of the contract was the fact that he did not complete the work, which evidence the statute specifically stated could not be used for that purpose, our Supreme Court reversed Gallo's conviction.  *Id.* at 1112.

Appellant also points us to **Commonwealth v. Bentley**, 448 A.2d 628 (Pa. Super. 1982), another case involving theft by deception.  Therein, Gerald Bentley signed a contract with an elderly couple to repair a porch, for which he received one-third of the total construction price as a down payment.  *Id.* at 629.  Bentley was then asked by the same couple to rebuild a garage, and an additional down payment was provided for the garage work.  *Id.*  Four days after the garage work was added to the job, but before any work had taken place, Bentley asked the couple for an additional sum of money, claiming personal family problems.  *Id.*  Bentley offered to build the couple a patio if they paid this additional amount.  *Id.*  The couple gave Bentley the additional money he requested.  *Id.*

Bentley tore down the couple's old porch and garage, and installed a footer. *Id.* at 630. Thereafter, Bentley did no further work and failed to respond to the couple's attempts to contact him for information about the home improvement projects he had been hired to do. *Id.* All in all, Bentley had received approximately 87% of the total quoted price for the work, or over $4,300. *Id.* After the couple contacted the police, Bentley offered to complete the work, but never did. *Id.* Bentley was convicted of theft by deception, 18 Pa.C.S. § 3922. On appeal, however, his conviction was reversed, with this Court's stating:

> If … [Bentley's] conviction for theft by deception is to be affirmed, we must find that [Bentley] never intended to perform his part of the contract(s). Our review of the record fails to show any evidence as to [Bentley's] intent, except his failure to perform. This alone is insufficient.

*Id.* at 631-32.

Appellant's reliance on these two cases under the theft by deception statute is misplaced. Appellant fails to account for the important distinction between the two statutory provisions: the exception in the theft statute related to proof of the contractor's intent to deceive or defraud. As noted above, the theft statute specifies that an intent to deceive cannot be inferred solely because the work was not completed. Moreover, the theft statute provides that "[t]he term 'deceive' does not … include falsity as to matters having no pecuniary significance, or puffing by statements unlikely to deceive ordinary persons in the group addressed." 18 Pa.C.S. § 3922(b). The lack of similar provisions in the home improvement statute is critical to our analysis.

"[W]here the language of a statute is clear and unambiguous, a court may not add matters the legislature saw fit not to include under the guise of [statutory] construction." ***Commonwealth v. Sanchez-Frometa***, 256 A.3d 440, 447 (Pa. Super. 2021). Moreover, where our "legislature includes specific language in one section of the statute and excludes it from another, the language should not be implied where excluded." ***Id.*** (citations omitted).

> Under the doctrine *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters. Similarly, this Court has long recognized that as a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[,] one must also listen attentively to what it does not say.

***Id.*** at 448 (citing ***Sivick v. State Ethics Comm'n***, 238 A.3d 1250, 1264 (Pa. 2020) (citation and footnote omitted)). Thus, when a statute contains a given provision, the omission of such a provision from a similar section is significant to demonstrate a different legislative intent. ***Id.***

Since the legislature included the exception related to a contractor's intent in the theft statute, but excluded it from the later-enacted home improvement statute, we decline Appellant's invitation to interpret the home improvement fraud statute as if such language were present. Had the legislature intended to exclude evidence related to the contractor's failure to perform as proof of his intent not to complete the home improvement contract, it could have done so. Thus, in interpreting the home improvement fraud statute under review in this case, the fact that Appellant did not perform the requested work may be a factor, although perhaps not an ***exclusive***

factor, in the court's consideration of whether Appellant intended to defraud the Storinos.

Further, with respect to **Gallo**, a primary reason that the trial court found that Gallo was guilty of theft by deception was his false indication that he was an account executive for a national publication. **Gallo**, 373 A.2d at 1111. On review, however, our Supreme Court found that this falsehood was "meaningless" because it concerned a matter of no pecuniary significance. **Id.** Leveto did not enter into the contract because he was influenced by Gallo's job title; he only entered into the contract after reviewing samples of Gallo's work and being impressed thereby. **Id.** Further, Gallo never lied about his contact information, and Leveto had the correct phone number and address for Gallo at all times. **Id.** The Court stated that these facts did not support an intent to deceive, but instead provided evidence of the exact opposite; that Gallo **did not** intend to deceive Leveto. **Id.**

However, in the case at bar, Appellant **did** deceive the Storinos about his contact information. While Mr. Storino was able to call and text Appellant, the wrong address was listed on the contract and on Appellant's business card. Further, when Mr. Storino repeatedly asked Appellant for the address where his cabinets were located, Appellant refused to supply one. This indicates to this Court that Appellant had an intent to defraud right from the beginning, when he handed the Storinos the business card with false information. **See Commonwealth v. Alexander**, 383 A.2d 887, 889 (Pa. 1978) ("Criminal intent may be proved by direct or circumstantial evidence.").

Moreover, the critical "falsehood" which undergirds Appellant's conviction concerned the length of time it would take to paint the Storinos' cabinets, an important consideration to the Storinos. While admittedly the written contract contained no time limit for completion of the project,[3] Mr. Storino testified that Appellant had told him personally, when the contract was signed, that the project would be completed in four to five days, and the invoice prepared in connection with the cabinet work gave a time frame of two to three weeks. N.T. Trial at 49, 104-06, 128-29. Mr. Storino testified that he told Appellant it was imperative for the project to be completed quickly, as the Storino family did not have use of their kitchen after Appellant removed the cabinets. *Id.* at 50-78. Thus, unlike **Gallo**, the statements made by Appellant relates to a material issue which was part of the reason the Storinos contracted with Appellant to begin with, *i.e.*, they wanted the job completed quickly. Appellant induced them into signing the contract by indicating that he could start within seven days. Thus, **Gallo** does not mandate the finding of evidentiary insufficiency here.

As to **Bentley**, Bentley's conviction for fraud by deception was reversed because our Court stated that it was unable to conclude that Bentley never intended to perform his part of the contract. **Bentley**, 448 A.2d at 631. This

---

[3] We note that 73 P.S. § 517.7, related to the formation of home improvement contracts, requires such contracts to include the approximate starting and completion dates for all home improvement projects. 73 P.S. § 517.7(a)(6). This law also requires that a home improvement contractor provide an accurate name, **address**, and phone number on all contracts. *Id.* at (a)(5).

Court found significant the fact that the homeowners had been referred to Bentley by a relative, and that Bentley had provided his correct name, address, and telephone number. *Id.* at 632. Bentley had expended "substantial resources" in his attempt to perform under the contract, and, while some of the money received from the elderly couple had been used for personal expenses, the homeowners were aware of and approved of the money being so used. *Id.* Under the totality of the circumstances, our Court found that Bentley's intent to deceive the homeowners from the beginning of the contract had not been proven and, accordingly, we reversed his judgment of sentence. *Id.*

Appellant argues that *Bentley* stands for the proposition that excuses made for a delay in a project are not sufficient to prove that the party never intended to complete the project. Brief for Appellant at 20. However, we do not read *Bentley* as going that far. As noted earlier, when making factual determinations, the jury is free to believe some, none, or all of the evidence presented. *See Ewida*, *supra*. Further, the Commonwealth may sustain its burden and prove each element of the crime charged by means of wholly circumstantial evidence. *Commonwealth v. Jacquez*, 113 A.3d 834, 839 (Pa. Super. 2015). Thus, it was up to the jury to determine whether Appellant's excuses for delay were credible, reasonable, and whether they proved his intent to complete the work.

While the *Bentley* Court found significant the fact that the homeowners had correct contact information for Bentley, such a fact is not present in

- 13 -

Appellant's case. Instead, we have Appellant's providing false contact information at the outset of his interaction with the Storinos, and his promising them that the cabinets would be painted and returned within two to three weeks. It is reasonable to infer that Appellant never intended to complete the work this fast, if at all, based on his continuously delaying the project either without explanation, or with multiple and contradictory excuses to justify his lack of progress. Indeed, Appellant even kept the location of the cabinets a secret when Mr. Storino wanted to take them back. These facts support an inference that Appellant was not telling the truth during his interactions with the Storinos from the outset, thereby indicating that he intended to defraud them by inducing them into entering the contract that he had no intent to complete, at least not within the time frame he provided to the Storinos.

Appellant also cites **Commonwealth v. Donohue**, No. 908 WDA 2019, unpublished memorandum (Pa. Super. filed Dec. 4, 2020),[4] in support of his appeal. There, Donohue was convicted of one count each of theft by deception and home improvement fraud after obtaining an $8,000 down payment for installation of a new roof for a condominium association but completing only minimal work thereon. **Id.** at 1-2. On appeal, Donohue challenged the sufficiency of the evidence for his convictions, maintaining that he did not intend to defraud, but merely "fell behind" in the work. **Id.** at 5.

_____

[4] This is an unpublished memorandum decision. Pursuant to Pa.R.A.P. 126(b), non-precedential decisions of this Court filed after May 1, 2019, may be cited for their persuasive value.

On appeal to the Superior Court, the panel found that Donohue's convictions were supported by sufficient evidence, despite the claimed lack of proof of his intent. *Id.* at 8-9. The Court noted that Donohue's intent could be inferred by his actions, words or conduct, as well as from the facts and attendant circumstances surrounding his interactions with the homeowner, which proved his guilt beyond a reasonable doubt. We concluded:

> Bearing in mind our standard of review, and viewing all facts in a light most favorable to the Commonwealth as verdict winner, we conclude the record supports the ruling of the trial court. The instant case reveals that [Donohue] accepted a down payment and cashed a check for a job that was to take six days, then failed to do any work for three months. When the Condo Association met with him, [Donohue] again represented he would do the work, but he did not appear for one month, after which the Association pursued criminal charges. As the trial court concluded, there was more than mere nonperformance that was indicative of [Donohue's] intent. [Donohue] took no steps to complete the work or refund any of the Condo Association's deposit. Moreover, the trial court, acting as fact-finder, determined that [Donohue] never intended to complete the job when he entered into the contract with the Condo Association. We find no reason to disagree.

*Id.*

Donohue appealed to our Supreme Court, which initially granted *allocatur* but then dismissed the appeal as being improvidently granted. *See Commonwealth v. Donohue*, 282 A.3d 682 (Pa. 2022). Justice Wecht authored a dissent from this dismissal, explaining that, in his view, lower courts would benefit from guidance as to several issues involving the home improvement fraud statute, including how to distinguish and reconcile the statutes for theft by deception and home improvement fraud. *Id.* Justice

Wecht posed the follow question, "How should judges and district attorneys distinguish the bad businessperson (who might be susceptible to civil remedies) from the criminal contractor (who more appropriately might face the threat of prosecution and the indelible taint of conviction)?" *Id.*

Justice Wecht stressed that "private parties should not leverage the criminal code to resolve disputes that might be more suited to the world of contracts," *id.* at 683, and Appellant argues that this case is evidence of such an improper use of the criminal justice system. Brief for Appellant at 19. Rather than filing a complaint with the police, Appellant maintains that the Storinos should have filed a claim for money damages in civil court. *Id.* at 23. Appellant asserts that the Storinos' homeowner's insurance paid for the installation of new cabinets, but would only do so if the Storinos filed a police report accusing Appellant of theft. *Id.* Thus, Appellant argues that his conviction is "precisely the sort against which Justice Wecht cautioned in his *Donohue* dissent." *Id.*

We are unconvinced. Our decision in the current appeal will not be impacted by one Justice's dissenting opinion from the dismissal of an appeal as improvidently granted. Instead, we are persuaded by the Superior Court's rationale in *Donohue*.

Moreover, we discern no reason to disagree with the well-founded decision by the trial court in this case. It explained, as follows:

> In this case there was substantial testimony by both Mr. Storino and [Appellant] regarding the negotiations, statements and representations made by [Appellant] prior to the parties[']

entering into the contract. The evidence was sufficient to allow the jury to find that the Storinos were not only negotiating a price to have their cabinets painted that was consistent with their budget[,] but a time frame in which the work would be done in order to minimize the time during which their kitchen would be under construction. There is a conflict in the testimony [as to] whether or not [Appellant] represented or stated that he would have the cabinets done in three to four days. [Appellant] denies that he made such a statement[,] but it was for the jury to accept or reject this testimony. It is also noted that [Appellant], in fact, acknowledged in his testimony that the time it would take to do the job was discussed. [Appellant] testified, "He did ask me, he said, how long do you think it will take? I said about two to three weeks." The evidence was sufficient for the jury to find that the Storinos were not willing to have the cabinets gone for some indefinite period extending for weeks[,] but that the time frame of three to four days was discussed and agreed upon prior to entering into the contract and was an inducement for them to enter into the contract. The evidence establishes that [Appellant] took the cabinets on January 21 and, by his own admission, never even indicated that they were completed until February 25 and, even at that point, was informing Mr. Storino that he had to pick up the cabinets because his van "was demolished." Clearly the evidence [was] sufficient for the jury to conclude that [Appellant] made a false or misleading statement which induced or encouraged the Storinos to enter into the contract.

As noted above, the intent to defraud can be found or inferred by circumstantial evidence and the attendant circumstances. In this case, contrary to [Appellant's] assertion that any statements or actions of [Appellant] after the date of the contract are irrelevant, the jury was permitted to consider [Appellant's] myriad of excuses for the delay which were inconsistent, conflicting, and in some cases incredible, in finding that [Appellant], at the time of entering into the contract, did not intend to complete the job as agreed upon. The jury was also free to consider that [Appellant] did not inform Mr. Storino that the cabinets were complete until after the police were involved in the investigation. The term defraud means "a deliberate deception perpetrated for unlawful or unfair gain." In viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence to support the jury's verdict.

Trial Court Opinion, 1/6/25, at 9-10 (citations omitted).

We agree with the trial court. Taking the evidence in the light most favorable to the Commonwealth as the verdict winner below, the evidence of record sufficiently supports Appellant's conviction. Appellant's offense is proven when a contractor makes a false statement to induce a person to enter into a written home improvement contract. 73 P.S. § 517.8(a)(1). Here, Mr. Storino testified that Appellant told him that the cabinets could be completed within a few days; the invoice gave a time frame of two to three weeks. He further testified that the time frame for completing the work was an extremely important reason that Appellant was hired. There is ample circumstantial evidence that Appellant, in an attempt to be hired for the cabinet work, provided a false time frame for the work, which induced the Storinos to hire him. Appellant's providing incorrect contact information and his actions taken after he had possession of the cabinets, especially his offering contradictory reasons for the delay and his refusal to tell Mr. Storino where the cabinets were located, were clearly acts of dishonesty and deceit. As such, they support the inference that Appellant did not intend to complete the cabinetry work as promised to the Storinos at the time they entered the contract. This is sufficient evidence that the home improvement fraud statute was violated. Appellant's first claim fails to garner him relief.

In his second issue on appeal, Appellant argues that the trial court failed to place the reasons for his sentence on the record, making his sentence manifestly excessive. In considering the discretionary aspects of Appellant's sentence, we note that sentencing is a matter vested in the sound discretion

of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion. ***Commonwealth v. Lawrence***, 313 A.3d 265, 285 (Pa. Super. 2024). In this context, an abuse of discretion requires the sentencing court to have ignored or misapplied the law, otherwise acted with manifest unreasonableness, or made its decision while exhibiting partiality, prejudice, bias, or ill-will; a sentence will be affirmed unless the sentencing court's determination suffers from such a lack of support so as to be clearly erroneous. ***Id.***

Appellate review of a sentence imposed is conducted under 42 Pa.C.S. § 9781. Therein, appellate courts are instructed that a sentence shall be vacated on appeal only in the following situations:

> (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously;
>
> (2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or
>
> (3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

42 Pa.C.S. § 9781(c). In all other cases, the appellate court shall affirm the sentence imposed by the sentencing court. ***Id.***

Further, there is no absolute right to appeal the discretionary aspects of a sentence. ***Commonwealth v. Mouzon***, 812 A.2d 617, 621 (Pa. 2002).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether [the] appellant has filed a timely notice of appeal,

*see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Morrobel***, 311 A.3d 1153, 1156 (Pa. Super. 2024) (citation and internal quotation marks omitted).

Here, Appellant has sufficiently complied with the requirements for review of his sentence. Appellant filed a timely notice of appeal and preserved his sentencing claim in his timely post-sentence motion. Appellant's brief includes the required statement under Pa.R.A.P. 2119(f).[5] With respect to whether Appellant has raised a substantial question for our review, we note that "[a] substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, Appellant argues that the court abused its discretion in sentencing him without the benefit of a pre-sentence investigation report (hereinafter, "PSI"), and that the court failed to provide sufficient reasons on the record for

_____

[5] Rule 2119(f) requires that this statement should immediately precede the appellant's sentencing argument on the merits in his appellate brief. Here, Appellant included his Rule 2119(f) statement after his summary of argument section in his brief and before his argument on his sufficiency issue. Nonetheless, Appellant has substantially complied with the Rule's requirements, and we will not find waiver on this basis.

his sentence. Both of these claims constitute substantial questions for our review. *See Commonwealth v. Goggins*, 748 A.2d 721, 727-28 (Pa. Super. 2000) (*en banc*)(finding a substantial question existed where the appellant claimed he was sentenced without a PSI and without sufficient reasons placed on the record); *see also Commonwealth v. Flowers*, 950 A.2d 330, 332 (Pa. Super. 2008) (concluding that the claim that the sentencing court imposed the sentence without considering the statutory factors or stating adequate reasons on the record for dispensing with a PSI was a substantial question). Accordingly, we will address Appellant's second issue on appeal.

Appellant waived the preparation of a PSI before he was sentenced. Appellant provides this Court with no reason to find his waiver of the PSI to be unknowingly or unintelligently entered. Thus, Appellant cannot now credibly argue that his sentencing hearing, occurring without a PSI, was fatally flawed. *See, e.g.*, *Commonwealth v. Schoff*, 911 A.2d 147, 158 (Pa. Super. 2006) ("A defendant must make a timely and specific objection at trial or face waiver of her issue on appeal. Pa.R.A.P. 302(a)[.]"). We could find that Appellant has waived review of this issue on appeal.

Even if this issue was not waived, however, Appellant still would not be eligible for relief. According to our rules of criminal procedure, a PSI "shall include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence." Pa.R.Crim.P. 702(A)(3). Also included in the PSI are any statements made by the victims of the appellant's crimes. Pa.R.Crim.P.

702(A)(4). Appellant claims that he was sentenced without the court being adequately informed about these issues. When considering sentencing issues and the lack of a PSI, our Court has stated:

> The first responsibility of the sentencing judge is to be sure that he has before him sufficient information to enable him to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing judge must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background. … The court must exercise the utmost care in sentence determination if the defendant is subject to a term of incarceration of one year or more[.]
>
> ***
>
> [While case law does not] require that the trial court order a [PSI] under all circumstances, the cases do appear to restrict the court's discretion to dispense with a PSI report to circumstances where the necessary information is provided by another source. Our cases establish, as well, that the court must be apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it.

*Goggins*, 748 A.2d at 728-29 (cleaned up).

Thus, we must consider whether the court had sufficient information available to it at the sentencing hearing such that the PSI was not required. At the hearing, the court was informed that Appellant had a prior record score of five and the offense gravity score for this offense was three, making the minimum, standard-range sentence Appellant faced for this offense between 6 and 16 months of incarceration. N.T. Sentencing, 9/24/24, at 3; *see also* Sentencing Guideline Form. The court imposed a minimum sentence here of 16 months, making it a standard-range sentence. Appellant was also entitled

to a credit of 329 days already served on this offense. N.T. Sentencing at 3. Appellant's JRS[6] worker, Rick Raraigh, informed the court of his sentencing recommendation: "Given [Appellant's] mental health diagnosis of major depressive disorder and opioid dependence, our [sentencing] recommendation is going to be for a recovery home, three-quarter house in the community and for him to participate with mental health, drug and alcohol outpatient treatment." *Id.* at 4. JRS would pay for at least two months in such a facility, after which Appellant would be responsible for paying his own way. *Id.* The sentencing court also heard that Appellant had been placed in the Cove Forge facility[7] prior to trial, and had completed that program. *Id***.** The court also heard that Appellant had been discharged from JRS for noncompliance in 2023, during the pendency of this trial, possibly because of Appellant's non-compliance with after-care recommendations.. *Id.* at 5.

_____

[6] This is a reference to "Justice Related Services." Justice Related Diversion Services are an array of support systems designed to work with the Allegheny County Jail, Courts of Common Pleas, Magisterial District Courts, and other community providers to assist persons with mental illness and/or mental and substance use disorders who encounter the criminal justice system. Staff provide coverage at the Allegheny County lock-up/jail intake area; coordinate services for individuals released from the Allegheny County Jail prior to or at the preliminary hearing; and develop and present service plans to the courts in the appropriate settings (which may include housing, treatment services and links to services in the community). *See* *Legal Help and Jail Resources*, ALLEGHENY COUNTY DEPT. OF HUMAN SERVICES, https://connect.alleghenycounty.us/legal-help-jail-resources/ (last visited June 24, 2025).

[7] This is a reference to Cove Forge Behavioral Health, an addiction treatment facility in Williamsburg, Pa.

Mr. Storino also testified at Appellant's sentencing. He expressed severe frustration with Appellant's prolonging this case with excessive delays. For example, the preliminary hearing was postponed six times so that Appellant could consider a proposed plea agreement. *Id.* at 7-8. Then, after the case was listed for trial, Appellant sought and obtained eight additional continuances. *Id.* The sentencing court was aware that Appellant had a prior record score of five that included 45 arrests and 23 convictions (18 of which were for misdemeanors, and one juvenile adjudication). *Id.* at 8-9. Appellant's prior convictions included "at least three" felony drug offenses, driving under the influence crimes, and receiving stolen property convictions. *Id.* at 9. Appellant was not eligible for a reduced sentence pursuant to the Recidivism Risk Reduction Incentive Act ("RRRI"), 61 Pa.C.S. § 4504. *Id.*

Based upon Appellant's criminal record, the Commonwealth argued for a sentence "in the high end" of the standard range of the sentencing guidelines, if not in the aggravated range. *Id.* The Commonwealth stressed that, during the pendency of this case, Appellant had once failed to appear for trial, and also failed to attend the Renewal Center, a step-down facility, as instructed. *Id.* at 10. Further, the Commonwealth argued that Appellant "doubled down" on the excuses he had provided to the Storinos by continuing to lie during his trial testimony. *Id.* at 11. The Commonwealth also sought restitution. *Id.*

Defense counsel sought the imposition of a "time served" sentence, or at least a standard-range sentence. *Id.* at 12. Defense counsel also argued

against any restitution being awarded to the Storinos that exceeded the $350 down payment that they had paid to Appellant, claiming that anything over that amount would give the Storinos free cabinets, which would be a form of unjust enrichment. *Id.*

After hearing these arguments, the court stated the following in imposing sentence:

> Okay. Here is what I'm going to do. I'm going to find for the record you are not RRRI eligible. DNA is already on file. I'm going to give you a standard[-]range sentence, but I'm going to give you at the high end. So what I'm going to do is give you 16 to 32 months plus the two-year period of probation I'll run consecutive to that. The terms are while you're at the state[,] you're[] to undergo a mental health treatment and drug [and] alcohol evaluation, and you follow up with any recommendations that they make. No contact with the victims, direct or indirect. I'm going to order restitution of the original amount of $350 to the victim in this case. Of course you'll get credit for any time you have in. Do you understand the sentence I just imposed on you today?

*Id.* at 13. The court provided no additional rationale in support of the sentence in this case in its Rule 1925(a) opinion.

"Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). In imposing sentence, it is particularly important for the court to be aware of the defendant's prior criminal record, his age, personal characteristics, and potential for rehabilitation. *Id.*

The sentencing court here was very aware of Appellant's long criminal history, and was informed of his mental health diagnosis and opioid

dependency issues. *See* N.T. Sentencing at 9, 4. It heard that JRS had discharged Appellant in 2023. *Id.* at 5. Defense counsel even asked for a standard-range sentence to be imposed, suggesting that Appellant could be immediately released because he had already served a substantial period of time for which he would be entitled to credit. *Id.* at 12.

After review, we would conclude that the sentencing court did not abuse its discretion in imposing a standard-range sentence on Appellant of 16 to 32 months of incarceration, followed by two years of probation. While some information that would have been in a PSI was absent from the hearing (for example, Appellant's educational history), this information would have added little to the court's understanding of Appellant's circumstances. The trial court had ample information about Appellant's offenses from the trial testimony, which also provided circumstantial evidence of Appellant's character. The trial court imposed a standard-range sentence, and properly applied the guidelines to find the standard range in this case of 6 to 16 months. Further, Appellant has provided no information from which we can conclude that the application of the sentencing guidelines in this case is clearly unreasonable. 42 Pa.C.S. § 9781. Accordingly, we would conclude that the sentencing court in this case had sufficient information to form a fully informed sentencing decision, despite there being no PSI.

With respect to Appellant's claim that the court did not put adequate reasons for his sentence on the record, we note that sentencing judges are not required to detail their sentencing philosophy; rather, it is important for

the court to explain any deviation from the guidelines. ***Commonwealth v. Simpson***, 829 A.2d 334, 338 (Pa. Super. 2003). Importantly, the sentencing court here did not deviate from the guidelines. Considering the totality of the evidence presented, including information about Appellant's criminal history, his mental health diagnosis, and opioid dependency, we conclude that the sentencing court sufficiently stated its reasons for imposing the standard-range sentence here. The court did not abuse its discretion in imposing sentence.

Finding no merit to Appellant's claims, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/24/2025